Robert L. GORMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 60558.

Court of Criminal Appeals of Texas, Panel No. 2.

March 10, 1982.

On Rehearing June 23, 1982.

Frank Maloney and David H. Reynolds, Austin, for appellant.

Ronald Earle, Dist. Atty., and John Dietz, Asst. Dist. Atty., Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ONION, P.J., and DAVIS and CLINTON, JJ.

OPINION

CLINTON, Judge.

In this appeal from a judgment of conviction for third degree felony theft, we need

not summarize the facts nor address all twenty one grounds of error. In light of recent opinions by this Court on the point, we move directly to ground of error nine. It complains that the trial court erred in overruling paragraph II of appellant's motion to quash.

In pertinent part, the indictment alleges that on a given date and with the required intent and culpable mental state appellant did "unlawfully *appropriate* such property," namely "one camera" valued at more than two hundred but less than ten thousand dollars.[1] The motion to quash asserts that the indictment "fails to define which type of 'appropriation' in Article 31.01 V.T.C.A., Penal Code, is being charged . . . thus providing him with inadequate notice upon which to defend . . ."[2] After hearing a brief presentation by counsel for appellant, the trial court overruled the motion.

Appellant's complaint raises, then, a matter of adequacy of the constitutional requisite of notice to an accused of the facts that constitute the legal charge against him, and we must consider the matter from his perspective. Article I, § 10, Constitution of the State of Texas; *King v. State*, 594 S.W.2d 425, 426 (Tex.Cr.App.1980). Our consideration tests the indictment on its face, by itself as a pleading. *Brasfield v. State*, 600 S.W.2d 288, 294–295 (Tex.Cr.App. 1980).

Sections 31.03 and 31.01, supra, in combination prescribe or permit conviction on "more than one set of circumstances," *Brasfield*, at 295. That is, one may appropriate property by bringing about a transfer or purported transfer of title or other nonpossessory interest in it *or* by acquiring or otherwise exercising control over property *other than* real property.[3] See Jones, "Theft: Texas Style," 41 Tex.Bar J. 1063 (December 1978). A camera is, of course, "property," being "tangible . . . personal property," Section 31.01(6)(B).

Recently this Court again revisited "the issue of whether, upon timely specific request, this indictment was adequate to provide notice of the accusations against the accused," *Ferguson v. State*, 622 S.W.2d 846, 849 (Tex.Cr.App.1981, Opinion on Rehearing). Pointing to language in *Thomas v. State*, 621 S.W.2d 158 (Tex.Cr.App. 1981) that the statutory term under examination "does not go to an act or omission of the defendant," *id.*, at 164,[4] and reviewing germane authorities, the *Ferguson* Court gleaned the applicable rule controlling determination of the kind of motion to quash now before us, *viz*:

> "From these cases, it is clear that even though an act or omission by a defendant is statutorily defined, if that definition provides for more than one manner or means to commit that act or omission, then upon timely request, the State must allege the particular manner or means it seeks to establish." *Id.*, at 851.[5]

■ Application of the *Ferguson* rule to the case at bar indicates that the trial court erred in overruling appellant's motion to

---

1. All emphasis is added by the writer of this opinion unless otherwise indicated.

2. V.T.C.A. Penal Code, § 31.03(a) provides that one commits an offense if one "unlawfully appropriates property with intent to deprive the owner of property." Section 31.01(5), *id.*, defines "appropriate" to mean:

   "(A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or
   (B) to acquire or otherwise exercise control over property other than real property."

3. By way of shorthand rendition, we shall call the first of several methods "transfer of title" and the second means "exercise of control."

4. Underscoring was supplied by the Court in *Thomas*.

5. Addressing one facet of the State's argument, the Court explained that if the indictment did not allege "each type of criminal conduct" proscribed by statutory definition, an accused "would be left to guess or assume that the State was going to prove one or all the types of conduct," *ibid.* This is not adequate notice to an accused for, as *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977) had pointed out, an accused "is not required to anticipate any and all variant facts the State might hypothetically seek to establish," *id.*, at 947.

quash,[6] and without more we would now sustain the ninth ground of error. However, there may be more in the particular context of the statutory definition of "appropriate."

Though some operative terms were changed by the Legislature in 1975,[7] the conceptual thrust of the offense of theft remained essentially the same. The original concept, we are informed, was "nonpossessory" as used in the former definition of "obtain" meant "interests that do not require possession to exist, such as title;" whereas "exercising control" was primarily directed at "those thefts that involve only possession," but also "encompasses conduct that does not involve possession." It follows that any distinction between "obtaining" and "exercising control" is "imprecise," Practice Commentary following § 31.03. The 1975 legislative change, which we have noticed in note 7, neither altered the original concept nor made more precise that which was imprecise. One may still steal some property by "transfer of title" or by "exercise of control."

The property alleged to have been stolen by appellant is "one camera" worth more than two hundred dollars. May such a camera be taken unlawfully through more than one manner or means prescribed in the definition of the operative term "appropriates?" The answer to that question may well depend on the nature and quality of the camera and, though we continue to restrict our testing of adequacy of notice from the face of the indictment, the point to be made derives from what the parties agree describes this particular camera. See *Ferguson v. State*, supra, at 851.[8]

It is said to be a Hasselblad, 500 cm. camera, with 80 mm lens and film magazine, having a stated serial number. They characterize it as "expensive"—with accessories, its estimated value is "around $3,000." While one need not be absolutely sure, legal notions of "transfer of title" (the shorthand rendition we have used) suggest that interests in such "goods" do not require possession to exist. See V.T.C.A. Business and Commerce Code, §§ 2.105(a)[9], 2.401(a)[10] and 2.403.[11] Thus, title to the Hasselblad camera seems susceptible to transfer by one who had not acquired or otherwise exercised control over it.

Accordingly, we hold that in light of appellant's timely motion to quash the indictment did not provide adequate notice of the charges against him. *Ferguson v. State*, supra; see *Thomas v. State*, supra, cf.

6. The briefs before us were filed with the Clerk in January 1979. Though neither party had the benefit of *Thomas* and *Ferguson*, appellant anticipated such a rule by analogizing from *Johnson v. State*, 547 S.W.2d 599 (Tex.Cr.App.1977) and quoting from *Drumm v. State*, supra. The State, for its part, understood appellant to contend that the indictment failed to allege "in which manner the appellant *exercised control* over the property to constitute theft," and argued that under *Johnson* the allegation that appellant did "appropriate" the camera is sufficient. That argument, of course, misses the point that the inquiry is really whether the State "must allege the particular manner or means it seeks to establish," *Ferguson*, supra, at 851.

7. The initial central provisions denounced conduct by which an accused "obtains" property unlawfully *or* "exercises control" over property, "other than real property," and to "obtain" meant "to bring about a transfer or purported transfer of a nonpossessory interest in property." See former §§ 31.03(a) and 31.01(5). Acts 1975, 64th Leg., ch. 342, p. 914, §§ 9 and

10 reduced the key words to "appropriates" and incorporated within its definition both "transfer of title" and "exercise of control," see note 2 *ante* and accompanying text.

8. "In fact, in the present case, two possible offenses may have been involved. The *record indicates* that there was an 'offer to sell' ... [and] a distinct and different 'constructive delivery' may have been shown."

9. " 'Goods' means all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale..."

10. Subject to certain other provisions, "title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."

11. "A person with voidable title has power to transfer a good title to a good faith purchaser for value."

*Phelps v. State*, 623 S.W.2d 936, 937 [12] (Tex. Cr.App.1981).

The judgment of conviction is reversed and the indictment is ordered dismissed.[13]

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

This is an appeal from a conviction for theft. On original submission the judgment was reversed because the trial court denied a motion to quash the indictment for failure to give adequate notice to appellant of the acts charged against him.

In its motion for rehearing the State asserts the indictment was sufficient to give appellant fair notice; the panel opinion cannot be reconciled with *Phelps v. State*, Tex.Cr.App., 623 S.W.2d 936; *Ferguson v. State*, Tex.Cr.App., 622 S.W.2d 846, upon which the panel opinion relied, was wrongly decided; and *Ferguson* and the panel opinion conflict with *Hunter v. State*, Tex.Cr. App., 576 S.W.2d 395, which allows disjunctive pleading.

*Phelps*, supra, and *Ferguson*, supra, were decided in light of *Thomas v. State*, Tex.Cr. App., 621 S.W.2d 158, in which it was held that a theft indictment was not subject to motion to quash for failure to specify the nature of ownership of the stolen property and the circumstances rendering the owner's consent ineffective. In reaching that conclusion the *Thomas* court emphasized that those terms did not go to an act or omission of the defendant. Id., at 164.

*Phelps* and *Ferguson* subsequently applied the "act or omission" test to determine whether motions to quash for insufficient notice should have been granted.

In *Phelps* it was held that the motion to quash for failure to specify the nature of the defendant's alleged *possession* was properly denied because "possession" is neither an act nor an omission, and therefore denial of the motion did not deprive the defendant of notice of the acts charged against him. *Phelps*, supra, at footnote 1.

*Ferguson*, on the other hand, held it was error to deny a motion to quash that sought notice of the type of delivery alleged, because delivery is an act of the accused that may occur in several ways, and the accused is entitled to notice of the acts alleged against him.

■ The distinction between *Phelps* and *Thomas* on one hand and *Ferguson* on the other is a clear-cut line: a defendant is entitled to notice of acts or omissions he is alleged to have committed. The State argues the true test should be whether the defendant has "fair notice." While we agree this is the ultimate test, we do not see how a defendant who has not received notice of the acts or omissions he is supposed to have committed can be said to have received fair notice of the charges against him. In other words, *lack of notice of acts or omissions is by definition a denial of fair notice*. In other areas of asserted denial of adequate notice, other factors must be ex-

12. Phelps was not entitled "to a more precise definition of the term 'possession'" because the term "describes a *relationship* to property" rather than an act or omission of the accused. The Dallas Court of Appeals has found itself "unable to reconcile this case with the reasoning of *Thomas v. State*, supra, or the holding in *Ferguson v. State*, supra, and choose to follow the en banc decision in *Ferguson*." *Coleman v. State*, 629 S.W.2d 126, (1981). The result was reversal of judgment of conviction and dismissal of indictment in a theft case postured identically like the one before us, except that the property stolen consisted of four suits of clothing shoplifted off their rack. Reconciliation is not for a panel of this Court, and presently uninformed as to the status of *Coleman v.*

*State*, supra, in the appellate process, we intimate no views as the correctness of the holding of the Dallas Court of Appeals.

13. In his twenty first ground of error appellant challenges sufficiency of the evidence to support the verdict of the jury, but his specific point is that the person alleged as "special owner" of the camera was not proved to be. He relies only on *McGee v. State*, 572 S.W.2d 723 (Tex.Cr.App.1978), but it was expressly overruled by *Compton v. State*, 607 S.W.2d 246 (Tex.Cr.App.1980), as is this ground of error. *Gillett v. State*, 588 S.W.2d 361, 364 (Tex.Cr. App.1979).

amined to determine whether the accused has received "fair notice."

"Although challenge to an accusation for failure to give adequate notice on which to prepare a defense must be asserted in a timely fashion (*American Plant Food* [*v. State*, Tex.Cr.App.,], [508 S.W.2d 598]), when properly asserted with adequate statement of the manner in which notice is deficient, fundamental constitutional protections are invoked. Because of the fundamental notions of fairness that require adequate notice of the nature of the charges against the accused in our system of justice, a timely claim of inadequate notice requires careful consideration. This calls for examination of the criminal accusation from the perspective of the accused, as contrasted to the measurement of its allegations against the statute that is the test for a claim that no offense is alleged." *Drumm v. State*, Tex.Cr.App., 560 S.W.2d 944, 946–947. (Footnote omitted.)

In this case the panel opinion properly held that appellant was entitled to his motion to quash because the indictment did not give fair notice of the conduct alleged against him. We reject the State's contentions that *Phelps* and *Thomas* are in conflict with the holding in this case. In those cases the motions to quash did not assert insufficient notice of the alleged conduct and did not show notice to be otherwise deficient.

■ In its remaining argument the State submits a conflict exists with *Hunter v. State*, Tex.Cr.App., 576 S.W.2d 395, which authorized disjunctive pleading. The argument advanced is that the State by disjunctive pleading may allege all variant theories included in the more general allegation which has been held subject to motion to quash, and appellant thereby would be left with no more precise notice than he has today. This argument overlooks the fact that it is the grand jury that must return the indictment.

1. Except upon waiver pursuant to Art. 1.141, V.A.C.C.P.

"The right to indictment by a grand jury before answering a felony charge and the right to notice ride in tandem. No one is answerable to a felony charge except on action by a grand jury making such an accusation[1]—and it is from that accusation that notice must be had ... [N]otice must come from the facts found and alleged by the grand jury in the indictment." *Brasfield v. State*, 600 S.W.2d 288, 302.

The supposition that a multiplicity of variant theories will be alleged in an indictment returned after a motion to quash is granted will become a fact only in those cases where some evidence is presented to the grand jury supporting each of the "multiplicity of variant theories." And in that rare case where there is such evidence, the accused is certainly entitled to notice of the State's multiple theory of culpability.

The motion for rehearing is denied.

ONION, P.J., concurs.

DALLY, W. C. DAVIS and McCORMICK, JJ., dissent.

CLINTON, Judge, concurring.

In one sense the dispute between the parties is reminiscent of the conflicting views expressed in *Thomas v. State*, 621 S.W.2d 158 (Tex.Cr.App.1980–1981). However, reflection on, and subsequent determinations of, similar issues have proved enlightening, and the opinion of the Court today fairly resolves the disagreement over whether certain decisions may be happily reconciled. I join that opinion and write only to focus additional light on our resolution of the contentions made by the State.

Research reveals that the unique character of "possessory" offenses has always plagued and confounded the bench and bar, for it defies analysis by the general methodology of viewing the major components of offenses as "conduct" distinct from "intent." Under the 1974 Penal Code, however, culpable "conduct" can be either an "omission" or an "act."[1] In turn, a culpa-

1. V.T.C.A. Penal Code, § 1.07(8).

ble "act" must be either a voluntary bodily movement,[2] voluntary speech,[3] or voluntary "possession," the latter of which in turn means "*actual* care, custody, control, or management," of a prohibited substance or object.[4]

But, as the words "actual care, custody, control or management," indicate, the "voluntary *act*" of "possession" necessarily presupposes that "the possessor *knowingly obtains or receives* the thing possessed or is *aware of his control* of the thing for a sufficient time to permit him to terminate his control." V.T.C.A. Penal Code, § 6.01(b).[5] Thus myriad possession cases allude to the quite distinct[6] requirement that the actor "know of the *whereabouts*" of the contraband. In sum, an awareness of the whereabouts of the contraband is an essential ingredient of the culpable *act* of "possession;" that is, the state of having "care," "control," "management" or "custody" under our law.[7] Clearly, it was a recognition of this novel character of possessory "conduct" which led a panel of the Court recently to conclude that one accused of a possessory offense is not entitled to have the accusatory pleading specify "what type

of possession" the State would rely on to prove the offense.[8] *Phelps v. State*, 623 S.W.2d 936 (Tex.Cr.App.1981); see also *Knab v. State*, 626 S.W.2d 60 (Tex.Cr.App. 1982). In *Phelps*, supra, the panel observed that "care," "custody," "control" and "management" simply cannot be reduced to specific "bodily movement" conduct.

Contrastively here, theft by appropriating property is definitely conduct—an act that is a bodily movement and may include speech—and, like "delivery" in *Ferguson v. State*, 622 S.W.2d 846 (Tex.Cr.App.1980–1981), the definition of "appropriate" in V.T.C.A. Penal Code, § 31.01(5) allows "different and distinct ways of establishing the accused's criminal conduct," *Ferguson*, at 850. Thus, the error in denying the motion to quash.

With these additional observations and comments I join in the opinion and judgment of the Court.

---

**2.** V.T.C.A. Penal Code, § 1.07(1); and V.T.C.A. Penal Code, § 6.01(a).

**3.** *Id.*

**4.** *Id.*; V.T.C.A. Penal Code, § 6.01(b); and V.T.C.A. Penal Code, § 1.07(28). (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

**5.** Indeed, the dictionary definitions of "care," "custody," "control" and "management" all reflect that such are "states of being" which involve an awareness of the "state," instead of identifiable "bodily movements."

"Care" is defined as "a burdensome *sense* of responsibility;" "charge, supervision;" "a disquieted *state* of blended uncertainty, apprehension, and responsibility;" "watchful *attention.*"

"Control" means "to exercise restraining or directing *influence* over: regulate;" "to *have* power over: rule."

"Custody" is "immediate *charge and control* exercised by a person or an authority;" "safekeeping."

"Management" means "the act or art of managing: control, direction;" "the conducting or supervising of something." Webster's New Collegiate Dictionary (1977); Webster's Seventh New Collegiate Dictionary (1969).

**6.** Distinct, that is, from the required "culpable mental state" that the actor know the forbidden character of the object or substance which is in his custody. See n. 7, *post.*

**7.** Of course, a culpable *act* must be coupled with a culpable *mental state* before an offense is committed. V.T.C.A. Penal Code, § 6.02(a). See § 6.03(a) and (b) for constitution of culpable mental states generally required for "possession" offenses, *viz:* "intentionally" and "knowingly." See also n. 6, *ante.*

**8.** A review of the ordinary meanings of "care," "custody," "control" and "management" reveal that the words are synonyms; Roget's International Thesaurus 3rd ed. (1962); requiring the State to select in a charging instrument a nuance of one over the others would be a meaningless exercise, since they all describe a "state" or "condition of fact" rather than a "bodily movement." See *Draper v. State*, 513 S.W.2d 563 (Tex.Cr.App.1974); and see generally n. 5, *ante.* Clearly, then, from the standpoint of an accused, his "notice" of the offense charged would in no way be improved by such delineation upon his exception. See *Drumm v. State*, 560 S.W.2d 944 (Tex.Cr.App.1977).