**Adolfo Cornejo CHAVEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–81–00275–CR.**

Court of Appeals of Texas,
El Paso.

Oct. 20, 1982.

Marshall I. Yaker, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before PRESLAR, C.J., and WARD and SCHULTE, JJ.

OPINION

SCHULTE, Justice.

This is an appeal from a habitualized conviction for third-degree felony theft. Appellant was sentenced to life imprisonment. We affirm.

In 1979, the El Paso Police Department was conducting an anti-fencing "sting" operation. In September of that year, Appellant was recruited as an informant by two El Paso narcotics officers who were peripherally involved in the undercover "sting" project. On October 17, he was certified by the department as a paid informant. His instructions were to arrange for individuals already in possession of stolen property to sell these items to a particular fence site on Montana. The narcotics officers did not tell Appellant that the "fences" were, in reality, undercover officers. He was led to believe that the police were interested in the activities of these "fences," as well as those of their customers. On the other hand, the "sting" site officers were also unaware that the Appellant was an informant working through the narcotics officers. It was not until after the project was completed and indictments being returned that these officers were advised of his initial status. Appellant was instructed not to participate in or encourage any burglaries or thefts. He was not to engage in the fencing negotiations or take any payments for stolen property. He was to notify the narcotics officers before he took any customers to the site and report the transactions afterward, giving names, descriptions of property and other information. Each after-sale report was to be the basis for his informer payment. Both the State and defense evidence is in agreement that these were the terms of the arrangement. From early October until November 16, Appellant followed these procedures without exception on six transactions. Several days prior to November 16, he began calling the "sting" officers about an inoperative vehicle for sale. The officers declined to buy it in that condition. On November 16, he ar-

rived at the "sting" site with Delia Ramirez. They had the vehicle, listed in the present indictment, with them. Contrary to instructions and prior course of dealing, Appellant did not contact the narcotics officers prior to this transaction. He also took an active role in negotiating the sale. Although the money was paid to Ms. Ramirez, both she and Appellant acknowledged that he had paid for the repairs on the vehicle and would be reimbursed.

At trial, Delia Ramirez and her brother testified that they were with the Appellant when the vehicle was originally stolen. They observed it parked in front of their mother's house. Owner Jose Mora identified the location as the place where he had left his vehicle when the brake drum broke. They testified that Appellant told them it was his vehicle. He entered it using a coat hanger and had them help him remove personal property from the car. He called a wrecker service and arranged for the vehicle to be repaired in Delia Ramirez's name. He paid $114.00 out of the $124.00 bill; the car's spare tire satisfied the remainder. When the car had been repaired he took Ms. Ramirez and the vehicle to the "sting" site. Before entering, he urged her to ask for $400.00. Of the $300.00 ultimately paid, he took $200.00, leaving her with $100.00. After the transaction, he did not contact the narcotics officers. When they looked for him, they found that he had left El Paso. Appellant denied Ms. Ramirez's version. He testified that he tried to contact the officers ahead of time but could not reach them. He contended that his involvement in this sale was the same as in the six earlier cases and was in accordance with his instructions. He did acknowledge paying for the car repairs.

In *Ground of Error No. One*, Appellant contends that the court improperly denied him access to the surreptitious videotapes of the six earlier transactions. He bases his appellate complaint upon the "use before the jury rule." Prior to trial, Appellant sought access to these tapes by motion for discovery. With regard to these tapes the motion was denied, but it was granted as to the videotape of the indicted transaction.

The first witness to testify was Detective Estrada, one of Appellant's recruiters. On direct examination, he testified that he had viewed all seven videotapes and began to distinguish the scope of Appellant's involvement in the first six from that in the seventh. Appellant objected on the basis of the "best evidence" rule. The objection does not comport with the issue on appeal. It was also properly overruled at trial since the rule applies only to documentary evidence. *Smith v. State*, 547 S.W.2d 6 (Tex.Cr.App.1977); *Henriksen v. State*, 500 S.W.2d 491 (Tex.Cr.App.1973); *Casiano v. State*, 495 S.W.2d 232 (Tex.Cr.App.1973). Estrada's partner, Detective Nava, testified next. He was questioned on direct and cross-examination with regard to the first six videotapes without any objection by the defense or further demand for the production of the tapes. Finally, Detective Gomez, the apparent "fence," was called to testify. He described the first six transactions and the contrast with the seventh from direct personal observation. At the close of cross-examination, Appellant requested that Gomez produce the other six videotapes, arguing that they were admissible because the issue of those transactions had been placed before the jury. This also does not appear as an appellate ground of error and does not comport with the "use before the jury" issue presented in the Appellant's brief. Initially, the court took the request under advisement, but subsequently denied it in conjunction with the denial of Appellant's motion for directed verdict. The court gave Appellant an opportunity to present the excluded evidence by way of bill of exception. This was not done and the contents of the excluded videotapes are not before us.

The "use before the jury" complaint, presented to this Court, was never suggested to the trial court. For this reason, the failure of the trial objections to comport with the issues raised on appeal, the inadequacy of the trial objections themselves, and the failure to present the excluded evidence by bill, Appellant has failed to pre-

serve error. Furthermore, an examination of the record discloses no harm in the exclusion of these tapes. Both sides were in agreement as to the terms of Appellant's informer contract, the procedures to be used and the scope of his authorized involvement. Both sides conceded that the first six transactions were in compliance with the police instructions. The description of Appellant's conduct during the first six transactions is consistent, from both State and defense viewpoints. The fact that one or more of the transactions and the payment of informer fees may have preceded the October 17 formal certification of the Appellant as an informer was admitted by the State's witness, Nava. There is no suggestion that the videotapes would disclose anything different from the testimony presented, and the first six transactions present no factual dispute for resolution by the jury as a predicate to their decision on the November 16 sale. Appellant has demonstrated no harm by the exclusion of these items of physical evidence. Ground of Error No. One is overruled.

■ In Ground of Error No. Two, Appellant contends there was insufficient evidence as to the value of the vehicle at the time of the theft to support the jury's verdict of guilt of theft of property over $200.00. The complainant testified that he purchased the vehicle for $1,400.00. It had a built-in stereo system at the time of the theft on November 14, 1979. It was inoperative due to a broken brake drum. The November 15 repairs, arranged by the Appellant, cost $124.00. The vehicle was sold to the "sting" officers for $300.00. It was maintained in the same condition from the sale to the date of return to the complainant. The complainant recovered the vehicle in June, 1980. He testified that the stereo was missing. Even considering the brake repairs the vehicle was in worse condition than when it was stolen. That summer of 1980, he sold the vehicle for $500.00. There was sufficient evidence for the jury to conclude that the vehicle was worth over $200.00 at the time of the theft. Ground of Error No. Two is overruled.

■ In Ground of Error No. Three, Appellant contends that the court should have granted his motion to quash the indictment due to the fact that the instrument fails to specify the type of ownership relied upon by the State under Penal Code Section 1.07(a)(24). The contention is without merit. *Thomas v. State,* 621 S.W.2d 158 (Tex. Cr.App.1980). Ground of Error No. Three is overruled.

■ In Ground of Error No. Four, Appellant complains of the court's denial of his motion to quash for failure of the indictment to specify the nature of lack of effective consent relied upon by the State under Penal Code Sections 31.01(4) and 31.03(b)(1). This argument is also without merit. When an indictment employs a term which by statutory definition includes several variations, upon timely request by the defendant, the State must specify the variation to be relied upon for conviction. Of course, this may be done by specific single allegation or by disjunctive specific pleading of several of the variations. The rule applies, however, only where the statutory term goes to an act or omission of the defendant. *Gorman v. State,* 634 S.W.2d 681, 682 (Tex.Cr. App.1982); *Thomas v. State, supra; Phelps v. State,* 623 S.W.2d 936 (Tex.Cr.App.1981). *Phelps* (possession of a controlled substance) and *Thomas* (ownership status of the complainant) were outside the rule. *Ferguson v. State,* 622 S.W.2d 846 (Tex.Cr.App.1980) (delivery of a controlled substance by the defendant) and *Gorman* (appropriation by the defendant) were within the rule, and the convictions were overturned. In this case the statute defines what "effective consent" does and does not include. It does not go to the acts or omissions of the Appellant but to the state of mind, acts and/or omissions of the complainant. The indictment provided adequate notice and the court's denial of the motion to quash was proper under the above-cited authority. Ground of Error No. Four is overruled.

■ In Ground of Error No. Five, Appellant contends that it was error to submit entrapment to the jury as a factual issue, the evidence having established the defense

as a matter of law. This would appear to be a case in which the relationship of the parties and the overall nature of the "sting" operation led all participants to an initial casual acceptance of entrapment as an automatic element of the litigation. Despite the total evidence and testimony presented, entrapment was submitted to the jury as a factual issue without objection from either side. Appellant's failure to object to the submission waived the issue now presented on appeal. Furthermore, entrapment as a matter of law was not urged to the court by motion for directed verdict at the close of the State's case-in-chief or after Appellant's defensive presentation.

Beyond failure to preserve this issue for appellate review, an examination of the evidence indicates that Appellant was not entitled to any defense of entrapment. The defense of entrapment is not available to one who denies that he committed the offense. *Norman v. State,* 588 S.W.2d 340 (Tex.Cr.App.1979); *Stephens v. State,* 522 S.W.2d 924 (Tex.Cr.App.1975); *Zamora v. State,* 508 S.W.2d 819 (Tex.Crim.App.1974); *Guerrero v. State,* 507 S.W.2d 765 (Tex.Cr. App.1974). Here we begin with a contractual agreement by which the Appellant became an agent of law enforcement personnel. Both sides agreed during trial on what the terms of that arrangement were. The authorized parameters of Appellant's conduct under that agreement would not constitute an offense. He was to take no part in any theft or burglary. In fact, his conduct as authorized by the agreement, would not even provide a defense of entrapment to the customers he ferried to the "sting" site. As a law enforcement agent, he would not be participating in or inducing the commission of an offense. He would not be a party to the offense since his facilitation of the delivery of the stolen property to the "sting" site would be an act of recovery, not deprivation. Both sides further agree, in their evidentiary presentation, that Appellant did not exceed this scope of authorized non-culpable conduct during the first six transactions. With regard to the November 16 indicted transaction the State's pleadings and evidence charge that he did not operate under the authority of his informer agreement. He, in fact, personally committed the offense of theft, aided by Ms. Ramirez and her brother. In response, Appellant denied the additional mental and physical elements of culpability constituting the offense of theft. He testified that he participated no more than in the preceding transactions. We are not confronted with a defense in which he testified that he was always involved in the greater scope of criminal conduct, which was condoned in the first six instances and yet indicted in the seventh. Nor is this a case of admitting a greater degree of criminal conduct on the November 16 transaction yet claiming inducement by law enforcement personnel. Simply stated, he denied commission of the November 16 offense. Not only did he fail to establish entrapment as a matter of law, the issue should never have been submitted to the jury. Ground of Error No. Five is overruled.

The judgment is affirmed.