Mary F. MILLER, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–81–559–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 31, 1983.

David Ziegler, Bellaire, for appellant.

Patricia Saum, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

OPINION

ELLIS, Justice.

This is an appeal from a conviction for theft of over $10,000. Punishment was assessed at five years confinement in the Texas Department of Corrections.

Appellant contends in her first point of error that the trial court erred in overruling

her motion to dismiss the indictment returned against her. In pertinent part, the indictment alleged that on or about nine given dates appellant did:

> unlawfully appropriate property, namely money, owned by Leo Jarnigan, hereafter styled the complainant, of the value of over two hundred dollars and under ten thousand dollars, with the intent to deprive the complainant of the property and without the effective consent of the complainant.

The indictment also alleged in pertinent part that on or about May 13, 1976, appellant did "unlawfully appropriate property, namely, money and one automobile, ..."; that on or about June 19, 1976, appellant did "unlawfully appropriate property, namely, money and two automobiles, ..."

By timely filed motion to dismiss, appellant asserted that the indictment's allegations were insufficient to put her on notice of "the specific act, the specific date, the specific mode and method of taking, the specific amount taken, the identification of the transaction involved."

Appellant argues that the trial court erred in overruling her motion to dismiss, because the indictment failed to define the type of "appropriation" alleged, as set out in Tex.Penal Code Ann. § 31.01(5) (Vernon Supp.1982–1983). Section 31.01(5) defines "appropriate" to mean:

(A) to bring about a transfer to or other nonpossessory interest in property, whether to the actor or another; or

(B) to acquire or otherwise exercise control over property other than real property.

■ Upon examining the face of the motion in question, it is clear appellant did not use the specific words "appropriate" or "appropriation" in her allegations regarding the indictment's deficiencies. She did state, however, that the indictment failed to "particularize with affirmativeness" the "specific mode and method of taking." This Court must determine whether the phrase "method of taking" is so substantially similar to "type of appropriation" that there is no significant difference in meaning. We hold

that no material difference exists between the two phrases.

Black's Law Dictionary (5th ed. 1979) defines the word "take" to include the following:

> In the law of larceny, to obtain or assume possession of the chattel unlawfully, and without the owner's consent; to *appropriate things to one's own use with felonious intent.* (Emphasis added.) *Id.* at 1303.

The word "taking" is defined, in pertinent part, as follows:

> In criminal law and torts, the act of laying hold upon an article, with or without removing the same. *It implies a transfer of possession, dominion or control.* (Emphasis added.). *Id.* at 1304.

"Appropriate" is defined as follows:

> To make a thing one's own; to make a thing the subject of property; *to exercise dominion over an object to the extent, and for the purpose, of making it subserve one's own proper use or pleasure.* (Emphasis added.) *Id.* at 93.

Tex.Code Crim.Pro.Ann. art. 21.17 (Vernon 1966) provides that "words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use *other words conveying the same meaning, or which include the sense of the statutory words.* (Emphasis added.)

In *Nixon v. State,* 572 S.W.2d 699 (Tex. Cr.App.1978), the Court held that the exact words of the statute need not be alleged in the indictment when the allegations are not materially different. *See also Church v. State,* 552 S.W.2d 138 (Tex.Cr.App.1977). It is unreasonable to assume that the State should be accorded the right to set out an indictment using words "substantially similar" to the statutory language, yet deny the same privilege to a defendant in making objections to such indictment. We find that the words "taking" and "appropriation" as used in the instant case, are sufficiently similar and there is no material difference. Therefore, appellant's first ground of error has been properly preserved for review.

We must now determine whether the trial court erred in overruling appellant's motion to dismiss because it failed to define the method of "taking" or method of "appropriation" as set out in Tex.Penal Code Ann. § 31.01 (Vernon Supp.1982–1983). We find that it did, and sustain appellant's first point of error. .

In *Gorman v. State,* 634 S.W.2d 681 (Tex. Cr.App.1982), the Court held that appellant's theft indictment was subject to a motion to quash because it failed to define which type of appropriation in § 31.01 was being charged, in order to provide him with adequate notice with which to prepare his defense. The court, quoting *Ferguson v. State,* 622 S.W.2d 846, 851 (Tex.Cr.App. 1981) (Opinion on Rehearing), applied the following rule to determine whether to grant the motion to quash:

> [I]t is clear that even though an act or omission by a defendant is statutorily defined, if that definition provides for more than one manner or means to commit that act of omission, then upon timely request, the State must allege the particular manner or means it seeks to establish.

*Gorman v. State, supra,* at 682.

The court held that the word "appropriate" in the indictment was an act which could have been committed through more than one manner or means, and the defendant was entitled to have the word clarified in the indictment.

We find that *Gorman* controls the disposition of the instant case. Appellant was charged with appropriating money and several automobiles. A person may "appropriate" money or an automobile by either transferring title or by acquiring or exercising control over the property. Thus, it is clear the State could have established that appellant committed the act of appropriating the money or automobiles by more than one manner or means. We therefore hold that the trial court erred in failing to grant appellant's motion to dismiss.

In the interest of due process, we will also address appellant's seventh ground of error, challenging the sufficiency of the circumstantial evidence upon which her conviction is based. The State offered evidence to show that appellant had embezzled over $10,000 from Leo Jarnigan Pontiac during 1976.

Appellant was the secretary-treasurer and office manager of Leo Jarnigan Pontiac from 1971 until 1977. She was in charge of the administrative work of the company, including the processing of all records and money. During the year 1976, appellant had six or seven employees in her office area for whom she was responsible. During the course of a workday, all money received, i.e. cash, checks, and drafts, was entered in a cash receipts journal. Included in the cash receipts journal were the date a payment was received, the party who made the payment, the amount of payment, and whether the payment was by check, draft, or cash. The daily transactions appearing on the cash receipts journal were balanced out at the beginning of the following workday, and bank deposit slips were prepared. Separate deposit slips were made for checks and drafts, and for currency when it totalled more than over $2,000. Appellant tallied the cash receipts journal several days a week, and either she or some other office employee prepared the bank deposit slips. After the deposits slips were prepared, appellant checked them to be sure they were accurate. A runner would pick up the deposits from appellant, and take them to the bank, and return the bank receipts to her after the deposits were made.

Edgar Henly, a financial investigator for the Harris County District Attorney's office, testified at trial that he had examined the records of Leo Jarnigan Pontiac for 1976, and had found twenty-two instances where discrepancies appeared in the records, indicating a theft of cash. Mr. Henly explained that the thefts occurred by someone taking all of the currency to be deposited on a particular day, and substituting a check for the currency on the deposit slip prepared for such currency.

The following examples illustrate the way the theft apparently took place. On February 23, 1976, the currency available

for deposit was $6,001.10. A check was not entered in the cash receipts journal. The difference between the currency taken and the check deposited was $774.30. In order to balance the cash receipts journal with the deposit ticket, an additional entry had to be made in the journal showing a cash payment of $744.30. An entry for this amount was made in the cash receipts journal in the name of J. Gonzalez. Mr. Gonzalez testified at trial that he had made no such payment, and the sales invoice on the car he bought at Leo Jarnigan Pontiac showed that the purchase price was already complete with Mr. Gonzalez' down payment and the amount financed through GMAC.

On March 15, 1976, the currency available for deposit was $2,936.31. A check for $4,598.17 was substituted for the currency, resulting in a difference of $1,661.86 between the check and currency. Two entries appeared in the journal totalling $1,661.86, one. for the husband of appellant's stepdaughter and one for the nurse for appellant's mother. Appellant testified that she had made these two payments herself in cash for the individuals.

On September 2, 1976, a check for $3,579.47 was substituted for the $2,300.56 in currency available for deposit. The difference between the check deposited and cash available was $1,278.91. An entry was made in the cash receipts journal for $1,278.91 in the name of Vanessa Lane, appellant's niece. Appellant testified that she paid this amount herself in cash as a downpayment on her niece's new car. She said this figure was quoted to her by the sales manager.

On September 14, 1976, a check for $5,479.04 was received by Leo Jarnigan Pontiac, but it was not entered in the cash receipts journal. However, an entry was made in the journal for appellant for $5,479.04 which amount was credited to her account with Leo Jarnigan Pontiac. Appellant did not owe the company any money at the time, so a check was subsequently issued to her for this amount. Appellant stated that the money she paid in was in cash, but she had no receipt to support this.

She also stated that the money was paid in as a loan to the company, but both the owner and general manager denied that any such loan was made.

In summary, Mr. Henly testified that the total loss to Leo Jarnigan Pontiac for the twenty-two discrepancies by virtue of cash, check, and auto losses was $125,424.37.

Appellant admitted that she had made the balancing entries in each of the transactions in issue. Many of the balancing entries made were in the name of friends and relatives of appellant and applied to the purchase price of automobiles for the individuals. Other balancing entries were applied to appellant's account with Leo Jarnigan Pontiac. The State presented evidence showing that each of the deposit slips in question was typed in pica type, and that appellant's typewriter was the only one that had a pica element on it. Two employees testified that appellant always typed "numbered" dates rather than writing out in full the name of the month; in fact, all of the deposit slips in question had such numbered dates. Two company "runners" testified that the daily bank deposits were regularly picked up from appellant's desk and returned to her.

Appellant testified that she had made all of the entries in question, but only at the direction of Sid or Leo Jarnigan. Both Jarnigans denied this allegation. She said she had prepared an envelope full of documentation to substantiate her claims, and had given them to the General Motors holding company auditor, but the auditor testified that she received no such information.

■ A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant; proof amounting only to a strong suspicion is insufficient. *Autry v. State*, 626 S.W.2d 758 (Tex.Cr.App. 1982); *Flores v. State*, 551 S.W.2d 364 (Tex. Cr.App.1977). Nevertheless, it is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all

the incriminating circumstances. *Vander-bilt v. State,* 629 S.W.2d 709 (Tex.Cr.App. 1981); *Flores v. State, supra.* The rules of circumstantial evidence do not require that circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but that the hypothesis intended is a reasonable one consistent with the facts proved and the circumstances, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence. *Autry v. State, supra; Swink v. State,* 617 S.W.2d 203 (Tex.Cr.App.1981). We also note, however, that we must view the evidence in the light most favorable to the verdict. *Ysasaga v. State,* 444 S.W.2d 305 (Tex.Cr.App. 1969). We conclude that the proof submitted by the State was sufficient to support the jury's verdict. Appellant's seventh ground of error is overruled.

The judgment is reversed and the cause remanded.