Eric **BERTRAM**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 07–82–0155–CR.

Court of Appeals of Texas, Amarillo.

Nov. 23, 1983.

Rehearing Denied Dec. 20, 1983.

Discretionary Review Refused April 25, 1984.

Michael B. Charlton, Steven M. O'Keefe, Houston, for appellant.

Danny Hill, Dist. Atty., Joe W. Jernigan, Asst. Dist. Atty., Amarillo, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

BOYD, Justice.

Appellant Eric Bertram brings this appeal from his conviction of felony theft and the consequent jury assessed punishment of five years confinement in the Department of Corrections. We reverse the judgment of conviction and dismiss the indictment without prejudice.

Appellant brings two grounds of alleged error. In his first ground, he asserts the evidence is insufficient to sustain the conviction. In the second ground, he reasons that the trial court erred in overruling his motion to quash the instant indictment because the indictment failed to define the type of "appropriation" used in committing the charged offense, thereby depriving appellant of adequate notice.

Since appellant challenges the sufficiency of the evidence, a summary of the facts is required. In its case in chief, the State presented five witnesses, Paul Shahan, Carol Cox, Jeff Bristow, Michael Lynn Bristow and Janice Kay Hathaway. Paul Shahan testified that he was a supervisor for the Hudson Oil Company in Amarillo. He hired appellant to manage this enterprise on December 29, 1980 and appellant reported to work on the 30th of December 1980. Upon hiring appellant, Shahan in-ventoried the contents of the store and changed the combination of the safe. The safe, located in the station, was a floor safe with two compartments; the top compartment was locked with a combination lock while the bottom contained a lock box requiring two keys for entry. Shahan said there were only two keys to the safe. One of the keys was kept in the bottom part of the safe while the other was given to appellant. Shahan also testified that no one could get money out of the safe unless "they have got the combination or the key."

Appellant called Shahan on Saturday, January 3, 1981 about 6:30 p.m. and that he had a job interview somewhere else Monday morning, January 5, 1981 and that he would be back to work after the interview but that he was not going to continue to work because there was "too much stuff going on." Shahan returned to the station in Amarillo shortly after 3:00 p.m. on January 5, 1981 and appellant was not there and had not been there. The combination (top) part of the safe was unlocked and the key to the bottom part of the safe was hanging in the back room. He looked inside the safe and saw only bank bags with checks and loose coins but saw no paper money. Shahan testified that appellant was not given permission to take money from the business except to the bank for deposit. Appellant had made one deposit on January 2, 1981 which was all checks. Shahan estimated the shortage after appellant's departure at nine thousand nine hundred nine dollars and four cents.

Carol Cox testified that she had been manager of the station for some four months until she resigned and appellant was employed. She had known the combination to the upper part of the safe but when appellant was employed the combination was changed and it was then known only to appellant and Shahan. Ms. Cox worked on January 2, 1981 until 2:30 p.m. At that time she gave appellant a bag containing over a thousand dollars. On Saturday, January 3, 1981, she worked until 2:00 p.m. and at that time, together with

appellant, put from thirteen to fourteen hundred dollars in the safe. She did not return to work until Monday, January 5, 1981. Appellant was not at work that day and Cox worked by herself until the arrival of Jeff Bristow at about 10:00 a.m. Appellant had previously told Cox that anytime he was not there to open the business that he would leave "opening money" of a hundred dollars in a desk drawer. She looked and finally found between nineteen and twenty dollars in change in the back of the drawer but no currency. With some seventeen currency dollars of her own she commenced business. When Cox got ready to check out at 2:30 p.m., she was uncertain as to what to do with the approximately sixteen hundred dollars she had collected. She decided to fold the money and put it in the top of the safe. She requested assistance from Jeff Bristow to help count the money. Jeff Bristow went in to the safe and "hollered" to her that the safe was unlocked. She found the safe unlocked, opened it and found no cash. She opined that no deposit had been made since Saturday, January 3, 1981, because the check she had cashed on Saturday was still in the safe.

Jeff Bristow testified that he worked on Sunday, January 4, 1981 from 10:00 a.m. until 6:00 p.m. He collected approximately five hundred dollars that day. Upon the completion of his shift, he totaled his collections, kept out one hundred dollars for the next shift, and deposited the remainder in the safe. Appellant was present when he left.

Mike Bristow testified that he worked from 2:30 p.m. to 10:30 p.m. on the evening of Sunday, January 4, 1981, and that appellant came to the station that night about five minutes before closing time. Bristow had "run a tape" on his collections that day and had collected some $808.00 for gasoline sold and $1,100.00 for other items sold. He put this money in the safe. He made up a "bank bag" containing one hundred dollars for the use of the morning shift, and in accordance with instructions from appellant, placed this in a filing cabinet drawer. He was then told by appellant to "go on home" and appellant would finish the closing up.

Janice Kay Hathaway, appellant's ex-wife, testified that she was living with appellant until January 5, 1981. On that date, appellant had taken his clothes and left without notice to her.

Appellant testified that others had keys to the safe. He stated that he had intended that January 4, 1981 was going to be his last day and that "in my mind" he believed Paul Shahan knew that would be his last day on the job. He denied taking any money and said he had left the money in the safe.

■ It is axiomatic that our review of the evidence must be conducted under standards mandated by the Court of Criminal Appeals. In the most recent decisions from which we must seek guidance as to those standards, a majority of that court has concluded that the same standard of review is to be applied to both circumstantial and direct evidence in all criminal cases. *Wilson, Freeman, Carlsen and Denby v. State,* 654 S.W.2d 444, 465 (Tex. Cr.App.1983, opinion on motion for rehearing.)[1] *See Hankins v. State,* 646 S.W.2d 191, 199 (Tex.Cr.App.1983). That standard, as classically articulated in *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1978) is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

■ A review of the various opinions in *Wilson* reveals that the court is in substantial disarray as to the fate of numerous other principles historically used in appellate review of circumstantial evidence.[2]

---

1. All of these cases were consolidated on motion for rehearing for resolution of a common issue in all cases. References here made to *Wilson* are to the consolidated cases on rehearing.

2. A good review of those principles is set out in *Flores v. State,* 551 S.W.2d 364, 367–68 (Tex.Cr. App.1977).

Pending a resolution of those differences and a clear enunciation as to the continued viability of those principles, we can only apply the standard from *Jackson* above quoted. When we apply that ultimate standard to this case, we find the evidence was sufficient to justify the jury's verdict. The surrounding circumstances of this occurrence with particular emphasis upon appellant's ready access to the safe, that he was the last person present at the station the night before the money was discovered missing, and his abrupt departure would, we believe, justify the jury in the return of its verdict since it acts as the sole judge of the credibility of the witnesses and may accept or reject any part or all of the testimony given by witnesses for either side. Ground of error one is overruled.

In ground two appellant argues that the trial court reversibly erred in overruling his motion to quash the indictment. His challenge is that the indictment is defective in that it fails to specify which type of appropriation is charged under Tex.Penal Code Ann. § 31.01(5) (Vernon 1982). This failure, he says, leaves him with inadequate notice upon which to defend. Omitting the formal parts, the indictment alleged:

> That Eric Bertram ... on or about the 5th day of January, A.D. 1981 ... did then and there knowingly, intentionally and unlawfully appropriate property, namely, good and lawful currency of the United States, owned by Paul Shahan ... who had a greater right to possession of the property than the defendant, of the value of over two hundred dollars and under ten thousand dollars, with the intent to deprive the complainant of the property ....

Tex.Penal Code Ann. § 31.01(5) (Vernon 1982) provides:

> (5) "Appropriate" means:
>
> (A) to bring about a transfer or purported transfer of title to or other non-possessory interest in property, whether to the actor or another; or

> (B) to acquire or otherwise exercise control over property other than real property.

In three recent decisions the Court of Criminal Appeals has considered cases involving theft indictments in which there was no allegation defining which statutory definition of "appropriate" the prosecution was relying upon. In each case, the court held that the trial court reversibly erred in overruling a motion to quash based upon such a failure. *See: McBrayer v. State*, 642 S.W.2d 504 (Tex.Cr.App.1982); *Coleman v. State*, 643 S.W.2d 124 (Tex.Cr.App. 1982); *Gorman v. State*, 634 S.W.2d 681 (Tex.Cr.App.1982). In *Gorman, supra,* the court, quoting from *Ferguson v. State*, 622 S.W.2d 846 (Tex.Cr.App.1980 opinion on rehearing) said:

> it is clear that even though an act or omission by a defendant is statutorily defined, if that definition provides for more than one manner or means to commit that act or omission, then upon timely request, the State must allege the particular manner or means it seeks to establish. *Id.* at 682.

These cases are dispositive of the question raised by this ground and mandate reversal.

The State argues that these cases do not control this case because none of them involved the theft of currency. It argues that one can never have a non-possessory interest in currency, therefore § 31.01(5)(A) is never applicable to a case such as this. We do not agree. In its original panel decision in *Gorman,* the Court said that "interests in ... 'goods' do not require possession to exist." The Court cited Tex. Bus. & Com.Code § 2.105(a) (1968) in support of this proposition. That section defines "goods" to include money, except as it is used in payment for other goods. *See* Tex.Bus. & Com.Code § 2.105(a) "Uniform Commercial Code Comment" wherein it is stated, "[g]oods is intended to cover the sale of money when money is being used as a commodity." Accordingly, it cannot be said there are no instances where § 31.-01(5)(A) would be applicable to the theft of

currency. *See Scott v. State,* 646 S.W.2d 638 (Tex.App.—Austin 1983, no writ).

Moreover, the very language of § 31.-01(5)(B) indicates there can be more than one method of appropriation under that subsection alone since it defines appropriation as occurring whenever one acquires, *"or otherwise exercise*[s] *control* over property."* (emphasis added.) Ground of error two must be and is sustained.

The judgment of conviction is reversed and the indictment is ordered dismissed without prejudice to retrial upon a proper indictment.