**Thomas Venton REYNOLDS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–84–0029–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 18, 1984.

Catherine Greene, Morrow & Burnett, Houston, for appellant.

Don Clemmer, Houston, for appellee.

Before WARREN, COHEN and LEVY, JJ.

## OPINION

WARREN, Justice.

This is an appeal from a conviction of kidnapping. The court assessed punishment at 6 years confinement.

The appellant brings three grounds of error on appeal: insufficiency of the evidence, error in overruling the appellant's motion to quash the indictment, and invalidity of the appellant's waiver of trial by jury. We affirm.

The evidence adduced at trial, viewed in a light most favorable to the state, may be summarized as follows:

The complainant was employed at the time of the offense as a topless dancer at Showgirls in Harris County. On Thursday, June 16, 1983, the complainant was introduced to the appellant while working at Showgirls. The appellant asked her to meet him after work, but she declined the appellant's offer.

The complainant returned to work the following day and at 10:00 p.m. was called into the manager's office. She testified that the appellant was in the office along with the night manager. The appellant then accused the complainant of taking $800 from him the previous evening. She denied having taken anything from the appellant whereupon the appellant struck her with a closed fist behind her ear. She further testified that the appellant expressed his intent to regain his money by forcing the complainant into prostitution.

After the meeting in the manager's office, the complainant went into her dressingroom. She testified that the appellant followed her into the dressingroom, grabbed her by the hair and dragged her out of the bar. Once outside, the appellant forced her into his car where she lay face down on the floor. The appellant hit the complainant about her back and legs with a club or stick while she remained lying on the floor of the car.

The complainant was then taken to an apartment complex. She was blindfolded and led inside an apartment. The complainant was told to undress after which two unidentified men entered the apartment and were invited by the appellant to have sexual relations with her. The two men declined and left the apartment, whereupon the complainant was bound with a telephone cord and put inside a closet. After a "couple of hours" she was let out of the closet, untied, and taken to a payphone to call persons in an attempt to raise the money allegedly stolen from the appellant. When complainant failed to get the money, she was taken back to the apartment where the appellant continued to hit her with "his fists or his hands sometimes or that club."

The complainant testified that she was then taken into the bedroom, told to undress, and with the appellant brandishing a knife, told to cooperate "or he was going to slash my throat or cut out my eyeball." The appellant and the complainant then had sexual intercourse.

The following morning, Saturday, June 18, 1983, the appellant left the complainant in the apartment guarded by two male companions of the appellant. She testified that the appellant gave his companions the knife and instructed them that if the complainant attempted to "get away or something like that to go ahead and kill" her.

In the afternoon of the 18th, the complainant was taken to the appellant's friend's house. She was again blindfolded and told to lie on the floorboard during the trip. While at the friend's house, the appellant continued to threaten her with the knife as well as beat the complainant with the club.

Later in the evening, the appellant fell asleep, at which time the appellant's friend told the complainant to wait about an hour and that she would receive a signal for her escape. Later, the complainant ran from the home to a neighboring house where she had the residents call the police.

The arresting officer testified that he arrived at the house where the call was made at 1:40, Sunday morning, June 19th. The officer noticed a large bruise behind the complainant's ear and that she was "hysterical ... frightened ... scared." The officer proceeded to the appellant's friend's house where he found the appellant asleep. The officer also found the club leaning against the bed and the knife on the nightstand. The appellant was then taken into custody.

In his first ground of error, appellant argues that the evidence is insufficient to support a conviction for kidnapping.

The elements of the offense of kidnapping may be summarized as followed: (1) intent and (2) abduction. Tex.Penal Code Ann. sec. 20.03(a) (Vernon Supp.1984). Abduction is defined as "restrain[ing] a person with intent to prevent liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." Id., at sec. 20.01(2). "Restrain", is defined as restriction of "a person's movement without consent, so as to interfere substantially with his liberty," and may be accomplished by either moving that person from one place to another or by confining that person. Id., at sec. 20.01(1).

▮ The indictment lodged against the appellant charges that he "used and threatened to use deadly force." The appellant contends that the state did not produce sufficient evidence to prove that the appellant either moved the complainant from one place to another or confined the complainant by using or threatening to use deadly force. The appellant further argues that "using or threatening to use force" is "legally synonymous" with "using or threatening to use a deadly weapon," thus requiring the state to prove that the appellant used a weapon to prevent the liberation of the complainant, citing *Phillips v. State*, 597 S.W.2d 929 (Tex.Crim.App.1980).

The *Phillips* court did not hold, however, that "deadly force" *requires* the use of a "deadly weapon." Rather, the court held that the element of "deadly force" is sufficiently plead in an indictment merely alleging the use of a "deadly weapon." *Phillips, supra*, at 934. Moreover, sec. 9.01(3) of the Texas Penal Code independently defines "deadly force" as "force that is intended or known by the act to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." Tex.Penal Code Ann. sec. 20.03(a) (Vernon Supp.1984).

The evidence adduced at trial demonstrates that the appellant both moved and confined the complainant by using and threatening to use deadly force. The complainant was forced to "move" blindfolded in appellant's car from the Showgirls bar to appellant's apartment while the appellant struck her about her back and legs with a club. The appellant also forced the complainant to "move" from the appellant's apartment to the appellant's friend's home, again, through threats of serious bodily injury.

The appellant also "confined" the complainant through the use and threatened use of deadly force. The appellant forced complainant to remain at the appellant's

apartment through repeated beatings as well as intermittent brandishing of a knife. Further, the appellant bound her with a telephone cord and placed her in a closet.

The appellant argues, however, that the complainant was not "confined" since the appellant, at various times, left her guarded only by the appellant's companions. In an opinion by Justice Price, this court held with respect to sufficiency of evidence in kidnapping: "It is clear that our law imposes no minimal requirement for restraint other than that interference with the victim's liberty be substantial." *Rodriguez v. State*, 646 S.W.2d 524, 526 (Tex.App.—Houston [1st Dist.] 1982, no writ). The court affirmed the conviction of an appellant who had confined his victim for a period lasting from two to four minutes. *Id.*, at 525. Thus the confinement imposed by the appellant, though periodically interrupted, is sufficient to constitute kidnapping.

Appellant's first ground of error is overruled, as there was sufficient evidence to warrant a finding of guilty.

In his second ground of error, appellant argues that although the indictment is not fundamentally defective, the trial court erred in refusing to quash the indictment.

The indictment, in pertinent part, reads as follows:

[the appellant did] intentionally and knowingly restrain [. . .] hereafter styled the Complainant, by using and threatening to use deadly force with intent to prevent the liberation of the Complainant . . .

The appellant moved to quash the indictment at trial alleging:

The indictment is fundamentally defective in that it uses only the conclusory term "restrain." By using only the conclusory term "restrain," and not defining the type of restraint the indictment is fundamentally defective as it fails to give the Defendant the notice required as to how he allegedly restrained the complainant, if at all.

The trial court overruled the motion on the ground that the indictment gave sufficient notice of the state's theory of prosecution.

The appellant contends that the state is required to specify the theory of "restraint" that it proceeded under. The appellant cites in support *Coleman v. State*, 643 S.W.2d 124 (Tex.Crim.App.1982), and *Gorman v. State*, 634 S.W.2d 681 (Tex. Crim.App.1982). The *Coleman* and *Gorman* cases held that where "appropriation" in a theft prosecution may be accomplished by alternative methods, the state is required to specify which theory it is pursuing when asked in a timely motion to quash. *Coleman, supra*, at 683.

The state counters that the two statutory types of restraint are essentially evidentiary and need not be alleged in the indictment, citing *Thomas v. State*, 621 S.W.2d 158 (Tex.Crim.App.1981) and *Phillips, supra*.

The arguments of the appellant and appellee emerge from the fundamental tension in the contemporary law of charging instruments in Texas. A recent article by Professor Dix of the University of Texas summarizes the current state of the law:

Statutes defining criminal conduct quite frequently provide a variety of means by which a single crime can be committed. A major notice problem in such cases is the extent to which the charging instrument must make clear which of those alternatives the State will rely upon at trial. Many recent decisions of the Court of Criminal Appeals appear to be intended to address and resolve this question. The results, however, are arguably neither clear nor principled.

Dix, *Texas Charging Instrument Law: Recent Developments and the Continuing Need for Reform*, 35 Baylor L.Rev. 689, 767 (1983).

In *Thomas*, a panel of three judges held that the state's failure to define the term "owner," in a theft indictment where "owner" has several statutory meanings, was reversible error when raised in a motion to quash. The Court of Criminal Appeals, en banc, reversed on rehearing, however, hold-

ing that the definition of the terms and elements at bar were "essentially evidentiary" and did not have to be alleged in the indictment. Also, in *Marrs v. State,* 647 S.W.2d 286 (Tex.Crim.App.1983) (en banc), the appellant challenged a burglary indictment on the ground that it failed to specify the type of "entry" among statutory alternatives. The Court concluded that whether the entry was committed with the defendant's body or some object, the question was fundamentally a matter of evidence, not requiring specific pleading in the indictment. *Marrs, supra,* at 290.

In contradistinction to the *Thomas-Marrs* decisions, the Court of Criminal Appeals, beginning with *Ferguson v. State,* 622 S.W.2d 846 (Tex.Crim.App.1981) (en banc), has found error in the failure to quash indictments where specific statutory alternatives were not delineated. In *Ferguson,* the Court found error in the failure to quash an indictment charging "delivery" of a controlled substance where the statute defined three alternative methods of "delivery." The Court concluded:

It is clear that even though an act or omission by a defendant is statutorily defined, if that definition provides for more than one manner or means to *commit that act* or omission then upon timely request the State must allege the particular manner or means it seeks to establish. (emphasis added)

*Id.,* at 851.

In *Gorman* and *Coleman, supra,* the Court invalidated theft indictments where the charging instruments failed to specify the type of "appropriation" alleged. *See also McBrayer v. State,* 642 S.W.2d 504 (Tex.Crim.App.1982); *Scott v. State,* 646 S.W.2d 638 (Tex.App.—Austin 1983, no writ).

Texas case law dealing specifically with kidnapping indictments has also suffered from a decided lack of uniformity.

In *Pollard v. State,* 567 S.W.2d 11 (Tex. Crim.App.1978), the court refused to reverse a kidnapping conviction where the indictment failed to specify which type of "abduction" the state alleged. The court concluded that since the offense was charged in the terms used in the penal code for kidnapping, the appellant received sufficient notice. *Id.,* at 12. The *Pollard* decision was followed in *Sanders v. State,* 605 S.W.2d 612 (Tex.Crim.App.1983), where the indictment again alleged "abduction" without further delineation.

Most recently, the Court of Criminal Appeals in *Gibbons v. State,* 652 S.W.2d 413 (Tex.Crim.App.1983), held that a trial court erred in overruling the defendant's motion to quash the indictment for failure to "delineate in which of two statutorily defined ways [the defendant] was alleged to have abducted the complainant." *Id.,* at 415. The *Gibbons* court concluded:

Where an indictment contains a necessary allegation of an *act* by the accused which comprises more than one statutorily defined means of performance, as here with the allegation of abduction, but the indictment fails to specify which of the statutory definitions of the act is relied upon, the indictment is subject to a motion to quash. (emphasis added)

*Id.,* at 415.

In the indictment in the present case, the state failed to use the term "abduct," but did *define* the term in stating that the defendant "used or threatened to use deadly force." *See* Tex.Penal Code Ann. sec. 20.01(2) (Vernon Supp.1984). The indictment failed, however, to define the type of "restraint" alleged to have taken place: moving from one place to another or confinement. The *Gorman* line of cases indicates that if the term "restrain" "goes to an act or omission of the defendant," then it is reversible error to fail to quash an indictment that neglects to delineate the type of "restraint" pursued at trial. On the other hand, if the term "restrain" does not go to "an act or omission of the defendant," then the "essentially evidentiary" rule of *Thomas* and *Marrs* controls.

Also, the *Pollard* and *Sanders* decisions may be distinguished from *Gibbons* since the earlier decisions did not involve motions to quash. Unfortunately, however, the

controlling decision of *Ward v. State*, 642 S.W.2d 782 (Tex.Crim.App.1982), dealing with the term *restraint* and following theory developed in *Thomas* and *Marrs*, is irreconcilable with the *Gorman* and *Gibbons* decisions.

In *Ward*, a false imprisonment case, the information alleged that the appellant "... did then and there unlawfully, intentionally and knowingly restrain Kenneth Rubin Quintana, hereafter styled the Complainant, by threats." *Ward, supra*, at 783. The appellant moved to quash the indictment alleging, among other things, that the information was vague and insufficient because it did not state the circumstances which gave rise to the allegation of restraint and/or confinement.

The panel in *Ward*, consisting of Chief Judge Onion and Judges Roberts and McCormick, held that: (1) the additional information requested by appellant in his motion to quash was evidentiary and not required for notice, and (2) the information set forth the offense in ordinary and concise language so as to enable appellant to understand the particular offense with which he was charged.

While it is impossible to make a meaningful distinction between *Gibbons*, which holds that "abduct" must be defined in a kidnapping indictment, and *Ward*, which holds that "restraint" need not be defined in a false imprisonment indictment, *Ward* clearly controls when the term "restraint" is at issue.

Restraint, as defined in section 20.01(1) Texas Penal Code, was promulgated for use in the prosecution of kidnapping and false imprisonment cases. As kidnapping is only an aggravated false imprisonment, the holding in *Ward* should apply to kidnapping as well as false imprisonment. Appellant's second ground of error is overruled.

■ In his third ground of error, appellant alleges that the record is devoid of a valid waiver of trial by jury.

The appellant notes that the docket sheet contains reference to the fact that a waiver of jury was "filed," but that neither the docket sheet nor the statement of facts reveals that the trial judge approved the defendant's waiver of the right to trial by jury.

The state contends that the written approval of the court of the defendant's jury waiver was placed in the appellate record through a motion to supplement the record, made and approved by this Court on August 16, 1984. The supplemental record contains a written waiver of trial by jury, signed by the defendant, the attorney for the defendant, the state *and* the trial judge, and filed with the Harris County clerk's office on December 9, 1983. The statutory provision governing jury trial waiver reads as follows:

The defendant in a criminal prosecution for any offense classified as a felony less than capital shall have the right, upon entering a plea, to waive the right to trial by jury, conditioned, however, that such waiver must be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the State. *The consent and approval by the court shall be entered of record on the minutes of the court, and the consent and approval of the attorney representing the State shall be in writing, signed by him, and filed in the papers of the cause before the defendant enters his plea.* Before a defendant who has no attorney can agree to waive the jury, the court must appoint an attorney to represent him. (emphasis added)

Tex.Code Crim.P.Ann. art. 1.13 (Vernon 1977). The appellant suggests that because the court clerk entered "waiver filed" instead of "waiver approved" on the "minutes of the court," the waiver of jury trial was ineffective. This, in turn, rests on the assumption that the word "minutes" has a meaning different from "record" and that filing the jury waiver in the trial "record" is statutorily insufficient. The appellant cites no authority for this proposition. Indeed, such a construction would be technical in the extreme.

Authorities cited by the appellant merely reaffirm the requirements of article 1.13 of the Code of Criminal Procedure, that a valid waiver of jury trial must be executed *contemporaneously* with the trial court's proceeding to trial. *Lawrence v. State*, 626 S.W.2d 56 (Tex.Crim.App.1981) (reversal for failure of state to execute waiver contemporaneously with trial; posttrial affidavits insufficient). Here, all parties signed and filed in the trial record a valid jury waiver on December 9, 1983, the date of trial.

As a valid waiver of jury trial was entered into the court's record, appellant's third ground of error is overruled.

Affirmed.