Raymond E. SHOWERY, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–82–00280–CR.

Court of Appeals of Texas,
El Paso.

May 23, 1984.

Rehearing Denied July 3, 1984.

**104**

Doris Sipes, Harry Tom Petersen, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

This is an appeal from a jury conviction for misapplication of fiduciary property over $200.00 in value. The court assessed punishment at four years imprisonment. We affirm.

The Appellant is a licensed physician and medical director of the Family Hospital of El Paso. He was the only doctor on the staff and a minority stockholder in the corporation which owned the facility. The remainder of the stock was owned by members of his immediate family.

In December, 1977, the complainant deduced that she was pregnant. Her regular physician was unavailable. The Texas Mental Health Mental Retardation hotline referred her to Dr. Showery for a pregnancy test and abortion. She visited Appellant at the hospital on January 6 and 7. She did not remain overnight; the abortion was performed on January 7. Prior to the operation, she paid Appellant $150.00 in cash, he refusing to accept a check. A follow-up examination was performed on January 12.

In April, due to weight gain, discomfort and heavy bleeding, she consulted her regular physician, Dr. Turner Sharp. He discovered a still-developing fetus estimated to be sixteen weeks old. He referred the complainant to Dr. Moody for a sonogram which revealed that the fetus was 19.8 weeks old. Dr. Moody estimated the cost of a second trimester abortion at $1,000.00 plus hospitalization.

The complainant returned to Dr. Showery to complain of the results of his surgery. After indicating that he was not "Sears" and didn't guarantee his work, he offered several explanations for her condition. He agreed to perform a second abortion and accepted $300.00 in cash. The operation was performed on April 20.

The complainant left two insurance forms with the doctor. Several weeks later, she inquired of the Appellant as to the status of the insurance. At first, he indicated that the claim would take more time. Later, he told her the claims had been rejected. In January, 1979, the complainant was preparing her income tax statements. She reviewed her Prudential Insurance policy and believed that the operation was covered. She returned to Appellant's hospital on January 10 and she signed two insurance claim forms for Prudential and two other blank forms. The Prudential policy covered surgical costs. Another of the complainant's policies from Blue Cross-Blue Shield covered hospitalization but was not called upon.

In February, the complainant received a copy of a check issued by Prudential to the Appellant, as well as a statement of Appellant's charges. Appellant had claimed $250.00 in surgical fees and $507.00 in hospitalization charges for the first operation in January, 1978. The latter were rejected by the insurer and a check issued for $250.00. The complainant called Dr. Showery to inquire about reimbursement. He indicated that it would take ten days for the check to clear the bank. Several days later, she received a copy of a second check and statement of charges relating to the completed abortion in April, 1978. The doctor claimed $250.00 in surgical fees and $700.00 for hospitalization. Again the hospitalization claim was rejected and a check for $250.00 issued. Both checks were deposited in the bank account of the Family Hospital. The complainant telephoned the Appellant who refused to deliver her any of the insurance proceeds.

In essence this case reduces itself to a proper characterization of the $450.00 which the complainant paid the Appellant for his services. She contends that she discussed the cost and insurance directly with Dr. Showery, in the presence of his insurance clerk, Sylvia Sanchez. She testified that the doctor told her $150.00 and $300.00 were the total charges for each of the two operations. He ultimately agreed to fill out the insurance forms and assist her in obtaining a reimbursement, for which he was to charge her a $25.00 fee.

He overrode her request that the forms specify direct payment to her and instead filled them out in such a fashion that the proceeds would go to him. He made three false or conflicting statements to her as to the status of her insurance. He attempted to charge the insurance company over $750.00 for the first surgery and $950.00 for the second, when in fact the cost was $150.00 and $300.00. Even discounting the hospitalization charges, the surgical fee claim of $500.00 exceeded the charges to the patient.

Sylvia Sanchez corroborated the complainant's testimony in every detail. She testified that she was present at all of Appellant's meetings with the patient, that the doctor stated that the total charge would be $450.00 and that he would assist the complainant in obtaining reimbursement from Prudential. Ms. Sanchez testified in a different manner at the first trial of this cause which resulted in a hung jury. At that time, she testified that she was not present for the meetings between Appellant and the complainant and that the insurance claims were not handled by Dr. Showery at all, but by his office personnel. At the second trial, she admitted that she had previously committed perjury. At the first trial she was still employed by Showery and lied at his request. When defense counsel subpoenaed her for the second trial, she felt that she could not repeat her perjury and contacted the prosecuting attorney.

Dr. Showery testified that he never discussed insurance with the complainant or involved himself in insurance claims arising out of his practice. The $450.00 which he received from the complainant was simply a down payment. He never offered to secure a reimbursement for her from Prudential. His explanation was at odds with the extent and nature of the claims which he filed with Prudential.

■ The credibility of the witnesses was the key factor in this case. If Showery were believed, then a not guilty verdict would follow. The testimony of the complainant and Sylvia Sanchez, supported by the insurance evidence, adequately supported the jury's verdict. When Appellant received the funds from Prudential, he held them in trust for the benefit of the complainant. This trust arose from the original contract for services, the fees paid and the claim for insurance reimbursement. By depositing these proceeds in his business bank account and refusing to tender them to his patient, he breached a fiduciary obligation and imposed continuing loss upon the beneficiary. The fact that by April, 1978, the complainant did not actually "trust" the Appellant does not excuse him from the trust which the law imposes upon him as a result of his contractual undertakings. The evidence was sufficient to support the verdict. Grounds of Error Nos. Six and Seven are overruled.

■ In Ground of Error No. One, Appellant contends that the court erred in admitting the testimony of State's witness Ernest Guinn, Jr. Guinn was a licensed attorney and professor in the Criminal Justice Department at the University of Texas at El Paso. Guinn was called by the State to expound upon the law of fiduciary relationships. When the State initially asked him to define "fiduciary," the defense lodged two objections—(1) failure to establish competence and (2) intrusion into the court's function of instructing the jury on the law pertaining to their deliberation. The first objection was properly overruled since the State went on to adequately demonstrate Guinn's competence as a result of education and experience.

The second prong of Appellant's objection was that the testimony in effect presented legal instructions to the jury, thereby invading the province of the court. The objection was overruled. Later, after defining "fiduciary," giving illustrative examples and distinguishing "commercial bailee," Guinn was asked to evaluate a hypothetical based upon the testimony of the complainant and Sylvia Sanchez. Guinn concluded that in accepting the insurance checks Appellant was acting in a fiduciary capacity. No objection was made to the hypothetical question or Guinn's re-

sponse. On appeal, it is contended that Guinn was improperly permitted to testify as to a legal conclusion. In *Hopkins v. State*, 480 S.W.2d 212, 218, 220 (Tex.Crim. App. 1972), the Court of Criminal Appeals abandoned the earlier standard of excluding testimony as to an ultimate issue to be resolved by a jury or "invading the province of the jury." *Hopkins* established a three-part predicate for admission of expert testimony, the last requirement being that the testimony not state a legal conclusion. All of Appellant's cited cases are directed towards this proposition. It does not, however, comport with the objection lodged at trial. At trial, Appellant complained that the testimony usurped the function of the trial court in providing abstract instructions and definitions to guide the jury in their deliberations. The objection was valid, but was lodged only towards Guinn's initial testimony, abstractly defining and exemplifying fiduciary. That objection is not presented on appeal.

█ The present ground of error could have been asserted against the State's hypothetical and Guinn's answer but was not. The two errors are distinct in character—legal instruction from the court guides the jury deliberation, a legal conclusion is the result obtained by the jury from application of the law to the resolved factual issues. The trial objection was insufficient to preserve the error presented on appeal. Ground of Error No. One is overruled.

█ In Ground of Error No. Two, Appellant contends that the statute, Tex.Penal Code Ann. sec. 32.45 (Vernon 1974), is unconstitutionally vague. He correctly states that a criminal statute's prohibitions and requirements must be sufficiently certain to afford a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by law. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Tex.Penal Code Ann. sec. 1.02(2) (Vernon 1974).

Appellant's specific complaint refers to the scope of the definition of "fiduciary." In this case, the operative portion is Section (a)(1)(B), "any other person acting in a fiduciary capacity, but not a commercial bailee." The preceding subsection specifically lists trustees, guardians, administrators, executors, conservators and receivers. Appellant contends that the subsection (a)(1)(B) designation is unconstitutionally vague. While not directly addressing a constitutional challenge, the Court of Criminal Appeals was called upon to evaluate the scope of that subsection in *Coplin v. State*, 585 S.W.2d 734 (Tex.Crim.App. 1979). There the defendant asserted that the (a)(1)(B) provision had to be narrowly construed as applying only to an individual associated with the specific fiduciaries enumerated in the preceding subsection. The court declined such a restricted interpretation, finding (a)(1)(B) to have a plain meaning, subject to normal usage and applicable to anyone acting in a fiduciary capacity of trust (other than a commercial bailee). Even in the absence of a specific constitutional objection, surely the Court of Criminal Appeals would not adopt such an open view of the language if the result were impermissibly vague.

█ While the legal profession's frequent handling of fiduciary matters leads to an initial impression that the term is solely within the province of our own profession, we must not overlook the fact that we have no monopoly on the English language. "Fiduciary" and "fiduciary relation" have a common meaning to be found in lay dictionaries. See: Webster's Third New International Dictionary (1971 ed.). Such lay definitions are consistent with subsection (a)(1)(B) and subject to common understanding. The consistent elements, applicable to the statute and this case, are holding or dealing with the property of another with a duty of trust toward the beneficiary. One contemplating a certain line of conduct must look to the entire statute and not just the initial definitions. The full complement of factors relating to the status of the actor may be derived by joint consideration of subsections (a)(1)(B), (a)(2) and (b). The statute provides fair

warning and is constitutionally sound. Ground of Error No. Two is overruled.

In Grounds of Error Nos. Three, Four and Five, Appellant complains of the court's refusal to grant his motion to quash the indictment due to insufficient specificity in pleading "misapply," "fiduciary capacity," and the manner of handling the property which involved substantial risk of loss to the complainant. Primary reliance is placed upon *Gorman v. State*, 634 S.W.2d 681 (Tex.Crim.App. 1982) and *Ferguson v. State*, 622 S.W.2d 846 (Tex.Crim.App. 1981). Those cases and their progeny hold that when the State pleads an act of the defendant which is subject to multiple statutory definition then the accused is entitled to specification of the definition or definitions relied upon by the State. This right may be invoked by motion to quash. In *Coplin*, the Court of Criminal Appeals approved an indictment and charge which were more explicit with regard to the fiduciary relationship of the defendant and complainants. That does not, however, mean that the present indictment is deficient.

The *Gorman* line of cases applies only to conduct of the accused. Furthermore, fiduciary capacity is not variously defined in Penal Code sec. 32.45(a)(1). Failure to specify one of the enumerated types of fiduciaries such as trustee, guardian or conservator, and the pleading of "fiduciary, but not commercial bailee" leaves the accused, the court and the jury with general recourse to the lay definition of one holding or dealing with property and trust for the benefit of another. Appellant's fiduciary status did not constitute "conduct" and the general understanding of the term fiduciary is sufficient to notify him of the nature of the duty allegedly breached.

█ "Misapply" certainly alleges conduct. Subsection 2 of the penal statute does not, however, proscribe two types of misapplication. There is only one act which consists of dealing with the fiduciary property in a manner contrary to the duty relationship. Subdivisions (A) and (B) do not describe alternative forms of conduct; they simply set out two authorities with which the culpable conduct may be in conflict—the agreement between the accused and the complainant or an overriding law prescribing the proper custodial conduct. The contract or state law applicable in a given case does not constitute conduct of the defendant. By analogy, the Court of Criminal Appeals recently held in *Smith v. State*, 652 S.W.2d 410 (Tex.Crim.App. 1983) that the State need not allege a specific manner of entry in a burglary indictment. The act of the defendant was singularly defined as intrusion, notwithstanding the statutory provision that the intrusion may be by bodily part or object attached to the body. Tex.Penal Code Ann. sec. 30.02(b) (Vernon 1974).

█ Finally, Appellant contends that the State did not sufficiently specify the manner in which his handling of the fiduciary property created a substantial risk of loss to the beneficiary. The State is not required to plead its evidence, nor the manner and means of commission of an offense save in certain circumstances established by statute and case law. This is not such a case. The indictment identifies the property, the duty, the beneficiary and the breach, thereby tracking the language of Penal Code sec. 32.45(b) (Vernon 1974). This afforded Appellant sufficient notice to prepare his defense and plead the resulting verdict in bar of subsequent prosecution. *See: Luffred v. State*, 642 S.W.2d 242, 244 (Tex.App.—Houston [14th Dist.] 1982, no pet.). Grounds of Error Nos. Three, Four and Five are overruled.

█ In Grounds of Error Nos. Eight and Nine, Appellant complains of the exclusion of photographs and medical records of the complainant. The photographs offered by the defense depicted the interior of the clinic operated by the Appellant. The clinic had been described by several witnesses without objection. While the photographs would have been admissible under the case law cited by Appellant, their exclusion in no way constituted harmful or reversible error. The content of the photographs was cumulative of other evidence on a collateral

matter. Ground of Error No. Eight is overruled.

 During her testimony, the complainant testified that following the second abortion procedure she began to eject fetal parts, causing nightmares and extreme emotional distress. She testified that she reported this incident to her physician Dr. Turner Sharp, who eventually hospitalized her for one week for suicidal depression. Dr. Sharp testified that he referred the complainant for psychiatric counseling due to suicidal depression but that she never reported any discharge of fetal parts. The medical records offered by the Appellant to impeach the complainant's testimony consisted of those generated by her hospitalization in Providence Hospital as well as the records of her attending psychiatrist, Dr. Baumgartner. Neither of these records could serve to directly impeach her testimony with regard to what she told Dr. Sharp. Defense Exhibit 4, the records from Providence Hospital, deal almost exclusively with administrative material, prescription medication, and observations of the complainant's daily responses to the therapeutic environment, drug treatment and therapy. In terms of diagnosis, the only comment is the repeated classification of neurotic depression, with suicidal thoughts. There is no reference to any causation whatsoever. The record does not impeach the direct testimony of the complainant. With regard to Defense Exhibit 5, Dr. Baumgartner's records, there was no effort to establish a business records predicate for admissibility. The record consists of three pages. The first is a patient information sheet containing her address, telephone number, marital status, insurance coverage and next-of-kin. The second page consists of brief notes by Dr. Baumgartner describing the complainant's medication and responses to therapy derived from several visits. The notes do not address the cause or probable cause of her condition. The third page is a photocopy of an emergency room admission form from Providence Hospital, not generated by Dr. Baumgartner but apparently forwarded to him for inclusion in his files. Neither de-

fense exhibit was demonstrated to be such a record that the absence of an entry relating to the complainant's assertion on direct examination could be construed as proof of the nonexistence of the fact asserted or the falsity of her direct testimony. *See e.g.,* V Wigmore on Evidence sec. 1532 (Chadbourn rev. 1974); 30 Am.Jur.2d Evidence sec. 959 (1967). *See also:* Texas Rules of Court, Rules of Evid., Rule 803(7) (West 1983). Appellant was not harmed by the exclusion of this evidence. Grounds of Error Nos. Eight and Nine are overruled.

 In Ground of Error No. Ten, Appellant complains of the court's refusal to submit his requested jury instructions on "receiver" and "fiduciary capacity." The issue of receivership, as defined in the requested instruction, was not raised by the evidence. The requested instruction was therefore properly refused. *Coplin,* supra.

Requested Instruction No. 2 was as follows:

Fiduciary Capacity: This term does not include an agent collecting debts for someone and failing to pay them over. It does not exist merely because one person reposes confidence in another.

As an absolute statement of law, the first sentence of the requested instruction is incorrect. *See e.g.,* Tex.Penal Code Ann. sec. 32.43(a)(2)(A) (Vernon 1974); 3 Tex. Jur.3d, Agency secs. 113, 117, 120 (1980). The second sentence poses such an incomplete expression of the fiduciary trust relationship that its delivery by the court would amount to improper judicial comment on the evidence. *See:* 64 Tex.Jur.2d, Words and Phrases p. 359 ("Fiduciary," "Fiduciary Relationship") (1965). The two instructions were properly refused and Ground of Error No. Ten is overruled.

 In Ground of Error No. Eleven, Appellant contends that the four year sentence imposed by the court violated the Eighth Amendment proscription of cruel and unusual punishment. The punishment was within the range established by the legislature for a third-degree felony. Tex. Penal Code Ann. secs. 12.34 and 32.45(c)(2)

(Vernon 1974). It was not violative of the Eighth Amendment. *McNew v. State*, 608 S.W.2d 166, 174 (Tex.Crim.App. 1980). Ground of Error No. Eleven is overruled.

The judgment is affirmed.