Rukmini Sukarno KLINE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–86–0382–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 10, 1987.

Robert C. Bennett, Shaffer, Bennett & Allshouse, Houston, for relator-appellant.

John B. Holmes, Jr., Harris County Dist. Atty., J. Harvey Hudson, Jose Gonzalez-Falla, Harris County Asst. Dist. Attys., Houston, for respondent-appellee.

Before EVANS, C.J., and HOYT and COHEN, JJ.

## OPINION

HOYT, Justice.

This is an appeal from a conviction for the felony offense of misapplication of fiduciary property. A jury found the appellant guilty and assessed punishment at 14 years confinement and a $10,000 fine. Because of the complexity of this case, a lengthy recitation of the facts in the light most favorable to the verdict is required.

The record indicates that Ms. Rukmini Sukarno Kline, the appellant, was the owner of a Kansas corporation named Frankenburg Import–Export Ltd. ("Frankenburg Ltd."). On February 1, 1977, Petroleos Mexicanos ("PEMEX") forwarded a purchase order to Frankenburg Ltd. requesting various types and quantities of oil field pipe totalling the sum of $5,289,063.64. The purchase order apparently went unfilled until 1979, when the appellant contacted J.E. "Bud" Franklin, chairman of the board and principal shareholder of Aston Oil Field and Oil Well Equipment and Tubular Supply Company ("Aston Oil"), a Texas corporation located in Houston. Franklin reached an agreement with the appellant whereby his company would locate a supplier in exchange for 50% of any profit made on the sale. After a diligent search, Aston Oil concluded that the pipe was unavailable at the price that PEMEX was offering to pay. Jim Whalen, the president of Aston Oil, contacted the appellant concerning the problem. The appellant successfully sought and obtained a commitment from PEMEX to pay an increased price for pipes. Thereafter, Aston Oil located Nissho–Iwai American Corporation ("Nissho–Iwai"), a Japanese supplier of oil field pipes, to fill the order at a satisfactory price.

In order to facilitate their joint venture, the appellant and Aston Oil decided: (1) to create a new corporation in which each partner, Aston Oil and Frankenburg Ltd., would have a 50% interest; (2) to direct payment for the pipe to the new corporation; (3) to incorporate the new corporation in the Cayman Islands to take advantage of the considerable tax savings that could be achieved there; and (4) to give the new corporation a name so similar to the appellant's corporation that PEMEX would not be confused by a name significantly different from the one appearing on the original purchase order. Along these lines, Frankenburg Import–Export Limited ("Frankenburg Limited") was formed. The single difference in name between the new company and Frankenburg Ltd. was that the new company named ended with the word "Limited" spelled out, rather than abbreviated.

In February of 1980, Frankenburg Ltd. purchased 92,212.56 meters of oil field pipe from Nissho–Iwai for $5,660,522.92. Included in the price was a commission of $323,026.14 due Frankenburg Limited. It was also agreed among the parties that PEMEX, upon receipt of the pipe, would issue a check in the amount of $5,660,-522.92, payable to Frankenburg Limited, and that the check would be deposited in a lockbox with the Bank of Tokyo Trust Company ("the Bank") in New York, New York. In conformity with the agreement, the appellant sent a letter of instruction to the Bank advising it that the Bank would soon receive a check from PEMEX in the amount of approximately $5,660,500 and that the Bank was to collect the check and credit the proceeds to the account of Nis-

sho–Iwai. Nissho–Iwai, in turn, sent a letter of instruction to the Bank authorizing it to transfer 5% of the face value of the check, plus $40,000, to the Mercantile Bank & Trust Company in Kansas City, Missouri, for the account of Frankenburg Ltd.

However, before the check was issued by PEMEX, and without the knowledge of Nissho–Iwai, the appellant sent a letter to the Houston office of PEMEX instructing PEMEX to make their check payable to "Frankenburg Import–Export Ltd., 650 Westdale Drive, Wichita, Kansas, 67209," and to hold it for her personally to pick it up. PEMEX informed the appellant that it had signed a document agreeing to pay $5,660,500 to Frankenburg Limited and that the check was to be sent to New York. Furthermore, that it had agreed not to change any condition of the agreement without the joint instructions of Nissho–Iwai and Frankenburg Limited. Approximately 30 days later, on July 30, 1980, the appellant responded to PEMEX's notice and stated that because the original purchase order was issued to Frankenburg Ltd., her company was the sole owner of said purchase order. Apparently in response thereto, PEMEX issued a check for $5,584,392.04 on August 7, 1980, payable to "Frankenburg Import–Export Ltd., 650 Westdale Drive, Wichita, Kansas 67209." The record does not explain why the check was issued for an amount less than the agreed purchase price. On August 8, the appellant went to the Houston office of PEMEX and picked up the check. The appellant then took the check to New York, where she deposited it in the account of Frankenburg Ltd. and later spent the money as her personal funds.

In her first point of error, the appellant contends that the trial court lacked jurisdiction to adjudicate this case "because no essential element of the offense," misapplication of fiduciary property, occurred within the territorial limits of the State of Texas. Specifically, the appellant argues that: (1) she lawfully acquired the property at issue in Texas; (2) she used the property outside Texas; and (3) therefore, any misapplication of the property occurred outside Texas.

■ In order to acquire jurisdiction over a person accused of committing a crime, an element of the offense must be committed in the state. *See Reger v. State,* 598 S.W.2d 868, 871 (Tex.Crim.App.1980). Texas Penal Code § 1.04(a)(1) (Vernon 1974) provides in relevant part:

> (a) This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which he is criminally responsible if:
>
> (1) either the conduct or a result that is an element of the offense occurs inside this state....

Under the facts of this case, we conclude that a jury could have reasonably concluded that an element of the instant offense occurred in Texas. After notifying the Bank that a check was forthcoming from PEMEX and instructing the Bank as to the check's proper disposition, the appellant intercepted the check in Houston and deposited the proceeds to her corporate account. Based upon the subsequent disposition of the proceeds from the check, a jury could reasonably conclude that the appellant's intent and purpose for intercepting the check was to deny Nissho–Iwai and Aston Oil their portion of the proceeds from the sale, in the face of both express and implied trust agreements. On May 5, 1980, the appellant entered into an "Assignment and Security Agreement" with Nissho–Iwai. The obvious purpose of this agreement with Frankenburg Ltd., rather than Frankenburg Limited, was to protect Nissho–Iwai from the very act that occurred. In that agreement, the appellant agreed to act as "trustee for the assignee (Nissho–Iwai)" in recovering "all monies" due or to become due from PEMEX and to immediately deliver them to [Nissho–Iwai] without commingling. It is undisputed that the appellant breached that portion of the agreement. The jury could have also placed great weight on the appellant's statement to Whalen that she did not owe the money

to Nissho–Iwai because the Japanese had tortured her family.

The appellant's first point of error is overruled.

In her second point of error, the appellant contends that the trial court erred in failing to grant her motion to set aside the indictment because the indictment failed to give her "sufficient notice of the charges against her." The appellant correctly asserts that she was charged with the offense of misapplication of fiduciary property "contrary to an agreement under which the defendant held the property as a fiduciary." However, she states that the "indictment failed to set out the agreement ... in its entirety." She contends that this "failure" is also a violation of Tex.Code Crim.P. Ann. arts. 21.04 and 21.11 (Vernon Supp. 1987), because the indictment "did not set out the offense with such certainty that a presumptively innocent person may be informed of what he must defend against."

The indictment, in pertinent part, states as follows:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, RUKMINI SU-KARNO KLINE hereafter styled the Defendant, heretofore on or about August 7, 1980, did then and there unlawfully, intentionally and knowingly misapply property, the defendant held as a fiduciary, namely, money, of the value of over ten thousand dollars, by dealing with the property contrary to an agreement under which the defendant held the property as a fiduciary, in a manner that involved a substantial risk of loss to Nissho–Iwai American Corporation, the owner of the property, without the effective consent of the said owner.

It is further presented that in Harris County, Texas, Rukmini Sukarno Kline, hereafter styled the Defendant, heretofore on or about August 7, 1980, did then and there unlawfully, intentionally and knowingly misapply property, the defendant held as a fiduciary, namely, money of the value of over ten thousand dollars, by dealing with the property contrary to an agreement under which the defendant held the property as a fiduciary, in a manner that involved a substantial risk of loss to Nissho–Iwai American Corporation, a person for whose benefit the property was held, without the effective consent of Nissho–Iwai American Corporation.

The appellant was charged under Tex.Penal Code Ann. § 32.45(b) (Vernon 1974), which states:

A person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary or property of a financial institution in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.

The language in the indictment substantially tracks the language in the statute. Indictment allegations that comport with the statute have been held sufficient to apprise an accused of the offense with which he is charged. *See Coplin v. State,* 585. S.W.2d 734, 735 (Tex.Crim.App.1979); *Showery v. State,* 678 S.W.2d 103, 108 (Tex.App.—El Paso 1984, pet. ref'd).

■ In light of the authorities cited above, we hold that the indictment in the instant case, properly tracking the language of § 32.45(b) of the Penal Code, afforded the appellant sufficient notice to prepare her defense. Details of the terms of the agreement would be surplusage. Moreover, the issue primarily disposed at trial was the appellant's state of mind at the time that she received the check, not whether she violated a term of the agreement, which was undisputed. *See Adams v. State,* 707 S.W.2d 900 (Tex.Crim.App. 1986). As in *Adams,* the appellant was allowed to inspect the State's entire file during pretrial discovery, except for the grand jury testimony of one witness. We overrule the appellant's second point of error.

In her third point of error, the appellant contends that the evidence was "legally insufficient to establish the existence of an agreement by which [the] appellant held money as a fiduciary as alleged in the indictment." The appellant concedes that she was a signatory to an agreement that assigned to Nissho–Iwai her rights to any payments made by PEMEX, but argues that there was no evidence of "exactly what a credit facility is or that one was established for the account of Frankenburg, Ltd.," which formed the consideration for the assignment.

■ Our reasoning and conclusion under point of error two are applicable here. Whether a written agreement existed, or whether a term or condition of that agreement was violated, is not of importance in light of the charges. It is undisputed that: (1) an agreement existed between the parties; (2) the proceeds from the sale of the steel belonged to Frankenburg Ltd., Nissho–Iwai, and Aston Oil; and (3) the appellant appropriated the funds to her own use and benefit without the consent of the complainant, Nissho–Iwai.

We hold that these undisputed facts are sufficient to establish both a fiduciary relationship and the breach thereof. *See Showery,* 678 S.W.2d at 106.

The appellant's third point of error is overruled.

In her fifth point of error, the appellant contends that the trial court erred by overruling her motion for mistrial based upon the discriminatory use of peremptory challenges by the State. After both sides had exercised their peremptory challenges, the remaining jurors were seated in the jury box. The court, at that time, inquired whether either side had any objection to the jury as constituted. No objection was made, and the jury was sworn. After the jury was sworn but before testimony began, the appellant filed and argued a written motion for mistrial based upon the State's alleged discriminatory use of its peremptory challenges. The appellant is of

Oriental extraction and was represented by trial counsel, who incidentally is black.

The United States Supreme Court in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), addressed the abuse and misuse of peremptory challenges to exclude black jurors. Particularly, *Batson* addressed those elements necessary for establishing a prima facie case of purposeful discrimination in the jury selection process. A defendant is required to show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. These facts and any other relevant circumstances must raise an inference that the prosecutor used his peremptory challenges to exclude veniremen from the jury on account of their race. *Batson,* 106 S.Ct. at 1723.

■ We conclude that the appellant cannot meet the requirements set forth in *Batson,* and therefore did not establish a prima facie case. Although she is a member of a cognizable racial group, there is no showing that any peremptory strikes were used to remove from the venire members of her race. Moreover, the appellant's objection was untimely for consideration either under *Batson* or under Sixth Amendment cases, where the focus is primarily on guaranteeing that juries are selected in such a manner as to permit "a fair possibility for obtaining a representative cross-section of the community." *Peters v. Kiff,* 407 U.S. 493, 500, 92 S.Ct. 2163, 2167, 33 L.Ed.2d 83 (1972) (quoting *Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 466 (1970)). Any objection, to be timely, must be made after the jury is selected but before it is sworn. *Henry v. State,* 729 S.W.2d 732 (Tex.Crim. App.1987) (not yet reported); *see also Miller v. State,* 692 S.W.2d 88, 93 (Tex.Crim. App.1985).

Finally, although the trial court denied the appellant's motion for a mistrial, nothing prevented the appellant from establishing the harm caused through a bill of ex-

ceptions or by a motion for new trial. Certainly, State action that denies any class of potential jurors the "privilege of participating equally in the administration of justice" requires eradication. *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880). Without evidence, however, it cannot be said that the denial occurred.

Accordingly, the appellant's fifth point of error is overruled.

In her sixth point of error, the appellant challenges the constitutionality of Tex. Code Crim.P.Ann. art. 37.07, § 4 (Vernon Supp.1987).

The issue of the constitutionality of art. 37.07, § 4 has been exhaustively discussed by this Court and other courts, and that section has been found constitutional. *Joslin v. State*, 722 S.W.2d 725 (Tex.App.—Dallas 1986, pet. granted); *Clark v. State*, 721 S.W.2d 424 (Tex.App.—Houston [1st Dist.] 1986, pet. granted). Moreover, the appellant failed to object to the charge or the instruction on parole. *Casares v. State*, 712 S.W.2d 818, 821 (Tex.App.—Houston [1st Dist.] 1986, pet. granted).

The appellant's sixth point of error is overruled.

In her seventh point of error, the appellant contends that the trial court erred in denying her a "one-day continuance to allow a determination as to whether appellant's absence was voluntary or wilful."

The record shows that the appellant checked out of her hotel room at 4:15 a.m. the morning after she was found guilty. Her counsel's oral motion for a 24-hour continuance to determine whether her absence was voluntary was overruled. The appellant argues that such denial violated Tex.Code Crim.P.Ann. art. 37.06 (Vernon 1981), which provides that in felony cases, defendant must be present when the verdict is read unless her absence is "wilful or voluntary."

In *Moore v. State*, 670 S.W.2d 259, 261 (Tex.Crim.App.1984), the court stated that:

In most instances, the validity of a trial court's decision that a defendant's absence was voluntary will have to be determined in hindsight. In the instant case, appellant offered no evidence at his motion for new trial to indicate that his absence was anything other than voluntary. Absent any evidence from the defendant to refute the trial court's determination that his absence was voluntary, we will not disturb the trial court's finding.

■ Similarly, in the case at bar, the appellant did not introduce any contradictory evidence when the continuance was requested or on a motion for new trial that showed a lack of wilfulness or voluntariness on her part for being absent. Consequently, we refuse to disturb the trial court's finding and holding. *Id.*

The appellant's seventh point of error is overruled.

In her fourth point of error, the appellant contends that the trial court erred in allowing the jury to separate while deliberating her punishment without her personal consent.

Tex.Code Crim.P.Ann. art. 33.03 (Vernon Supp.1987), states that "when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion." In such situations, the defendant "waives his right to be personally present at the trial." *Gonzales v. State*, 515 S.W.2d 920, 922 (Tex.Crim.App.1974). Moreover, counsel for the appellant agreed to the jury's separation. We overrule this point of error.

In her eighth point of error, the appellant contends that the prosecutor made improper jury argument by urging the jury to speculate that the appellant had been previously convicted of felonies.

Our review of the record shows that the appellant's objection to the prosecutor's argument was only that the facts were outside the record. Furthermore, she did not obtain a ruling from the trial court. Prior to this objection, the prosecutor made similar statements without objection.

It is well settled that the specific objection raised on appeal will not be considered if it varies from the specific objection made at trial. *Sharp v. State*, 707 S.W.2d 611, 619 (Tex.Crim.App.1986). This waiver rule is also applicable to constitutional error. *Parker v. State*, 649 S.W.2d 46, 55 (Tex.Crim.App.), *cert. denied*, 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983).

Under the facts of this case, we hold that where an appellant's objection made at trial fails to comport with the specific error he brings on appeal, and he does not establish any rationale for his failure to make a proper objection, our review of the alleged error is waived. *See Turner v. State*, 719 S.W.2d 190, 194 (Tex. Crim.App.1986).

The appellant's eighth point of error is overruled.

The judgment of the trial court is affirmed.