# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00349-CR

---

**Bridget Marie Owens, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 27TH DISTRICT COURT OF LAMPASAS COUNTY
NO. 9730, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Bridget Marie Owens appeals her conviction by a jury for misapplication of fiduciary property. *See* Tex. Penal Code § 32.45. The district court assessed Owens's punishment at two years' confinement in state jail but suspended the sentence and placed Owens on community supervision for five years. The court also ordered Owens to pay $5,705.74 in restitution. On appeal, Owens contends that the evidence is insufficient to support her conviction. We will affirm the district court's judgment of conviction.

### BACKGROUND

Bridget Owens worked as a store manager for Family Dollar in Lometa, Texas, in September and October 2016, when the store sustained the financial losses that are the subject of this appeal. Dennis Barringer, a district manager who oversaw the Lometa Family Dollar and

twenty-three other store locations, testified about Owens's daily duties, which she shared with other employees. These duties included counting the cash on hand at the end of the business day, placing the cash in a sequentially numbered cash-deposit bag, signing out the money on a handwritten Deposit Log by noting the date and time, delivering the cash-deposit bag to First State Bank Central Texas nearby, placing the cash-deposit bag in the bank's night drop, and verifying the deposit on the Deposit Log by signature, date, and time. Barringer testified that the notation verifying the deposit on the Deposit Log occurred after the bank provided a deposit slip with its stamp, reflecting the date of the store's deposit and the amount deposited. For night-drop deposits, the bank would send the deposit slip to the store a few days later.

Barringer did not know that any deposits were missing until he learned that the regional loss prevention manager went to the Lometa store and spoke to Owens. Barringer discovered that although store employees logged out deposits for September 26, 2016; September 30, 2016; and October 2, 2016, those three deposits never cleared the bank. No deposits from the store went missing before or after these three. After consulting with the regional loss prevention manager, Barringer notified law enforcement and met with Lampasas County Sheriffs' Office Investigator Matt Barnes.

Investigator Barnes received several documents from Barringer, including pages of the handwritten Deposit Log and Family Dollar's bank statements. The Deposit Log for September 26 showed that Owens signed the cash out of the store to take to the bank but that no cash was deposited that night. The cash on hand at the end of the day on September 30 and October 1 was left in the store safe and was not signed out as deposited until October 2.

Owens's co-worker Amanda Kidd testified that when she was closing the store on October 2, she noticed that two cash-deposit bags for September 30 and October 1 had not been

deposited but had remained in the store safe. She said according to store policy, "you're only supposed to have one deposit each night." Concerned about the safety of taking three bags of money to the bank at night by herself,[1] Kidd asked Owens, who was at the store for a few groceries, to assist her. Kidd opened the safe and handed Owens the two deposits (from September 30 and October 1 that were previously left in the safe) over the counter. Kidd testified that Owens "took them out and put them in her vehicle and waited for the third one, the one that I was about to do that night."[2]

Kidd stated that when she completed the paperwork for the October 2 deposit, she handed it to Owens, and Owens "walked out the door with it" while Kidd walked around the counter and set the alarm. Kidd then got in her own vehicle to follow Owens to the bank. At the bank, Kidd stayed inside her vehicle, and Owens got out of hers. Kidd testified that Owens had the night drop deposit key and "[s]he had bags in her hand. She stuck them in the deposit, she closed it, and she locked it." Kidd was unable to verify the dates on the bags that Owens deposited. Kidd told the jury that she did not know who took the money, but she denied that she took it.

The Deposit Log entries show that both Owens and Kidd signed the money out— i.e., as "deposited by" them—for the three cash-deposit bags from September 30, October 1, and October 2. But only the cash for the October 1 deposit cleared the bank. Three of the store's cash deposits—two that were to be delivered to the bank that evening (September 30 and

---

[1] Kidd explained her concern further, "[L]ike if somebody wanted to show up over there and attack you, you had three bags of money."

[2] Kidd confirmed that the "third one" she referenced was the deposit for October 2.

October 2) and one deposit from a prior day's business (September 26)—totaling about $5,700.00 never reached the bank and remained missing.

Investigator Barnes testified that he interviewed three store employees—Owens, Kidd, and Crystal Torres. He found no evidence that Kidd, Torres, or the bank was responsible for the missing money. He testified that Kidd and Torres were cooperative; and, although he did not testify about their statements to him, he acknowledged that Kidd and Torres were able to provide him with information about who may have been responsible for the crime.

Investigator Barnes interviewed Owens shortly after Barringer came to see him. During her interview, Owens brought him what she said were copies of pages from the Deposit Log.[3] Investigator Barnes had not requested those documents from her, and she was unaware that Barringer had already given Investigator Barnes original pages from the Deposit Log.[4]

The pages that Owens brought to Investigator Barnes had been visibly altered and were more difficult to read. Entries for the amounts that Owens deposited on September 26, September 30 and October 2—the dates of the three missing deposits—were blurred. The original Deposit Log listed Owens's name in the "deposited by" column for all three of the missing deposits. But on Owens's Deposit Log, a portion of the lower-left column, which listed the amounts of the store's cash on hand by date, was covered with white correction tape and overwritten with dates in late September.

Further, an entry on the original Deposit Log page showed that the amount of cash on hand for September 16 was $1,876.00, but the corresponding deposit slip for that date showed that only $1,276.00 was actually deposited with and credited by the bank. On Owens's

---

[3] The altered pages of the Deposit Log were admitted into evidence at trial.

[4] The original pages of the Deposit Log were also admitted into evidence at trial.

page of the Deposit Log, the amount of cash on hand for September 16 had been "whited out" and $1,276.00 was written over it, corresponding to the amount that the bank received that day.

Investigator Barnes testified that he asked Owens whether she had altered the Deposit Log documents because he had copies of the store's Deposit Log that were different. Investigator Barnes said that Owens admitted she altered the Deposit Log, and wrote new things on it, but said she had done it "so it would be easier for [him] to read." However, Owens did not explain why other portions of the Deposit Log she provided to him were illegible.

Owens told Investigator Barnes that she had signed for all the missing deposits and left the store with them. She had no explanation for why the bank never received the cash deposits for September 26, September 30, and October 2. Investigator Barnes reviewed Owens's finances, but she provided only a reloadable debit card to which she made direct deposits. He testified that because all of the missing deposits were cash, there "was no point" in adding cash to a debit card.

Jolene Alexander, an employee with First State Bank Central Texas, testified about the function of the night-deposit system. She stated that the night drop is accessible with a key, is part of an outside wall of the bank, and leads to the floor of the bank's records vault. She also stated that when Barringer reported the missing deposits, the bank inspected the night drop and confirmed that nothing was stuck. Alexander denied that a person could "come behind" another and retrieve what was deposited into the night drop. She further denied that the bank had any issues, aside from this incident, with lost or misplaced deposits from the night drop.

After the State rested its case, Owens moved for an instructed verdict, which the district court denied. At the conclusion of the trial, the jury convicted Owens for misapplication

of fiduciary property, and the district court assessed punishment. Owens filed a motion for new trial, which the court considered at a hearing and denied. This appeal followed.

## DISCUSSION

Owens contends that the evidence was insufficient to support her conviction for misapplication of fiduciary property because the State did not prove that she took it.

**Standard of review**

Applying a legal-sufficiency standard, we consider the evidence in the light most favorable to the verdict and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). "Beyond a reasonable doubt, however, does not require the State to disprove every conceivable alternative to a defendant's guilt." *Ramsey v. State*, 473 S.W.3d 805, 809, 811 (Tex. Crim. App. 2015). We defer to the jury's resolution of conflicts in the evidence, weighing of the testimony, and drawing of reasonable inferences from basic facts to ultimate facts. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We apply the same standard to direct and circumstantial evidence. *Id.*

Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Nisbett*, 552 S.W.3d at 262. Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Id.*; *see Springer v. State*, No. 03-04-00100-CR, 2005 Tex. App. LEXIS 6979, at *6 (Tex. App.—Austin Aug. 25, 2005, no pet.) (mem. op., not designated for

6

publication) (noting that conviction for misapplication of fiduciary property may be based on circumstantial evidence).

**Sufficiency of evidence**

Misapplication of fiduciary property requires proof that the defendant intentionally, knowingly, or recklessly misapplied property that she held as fiduciary in a manner that involved a substantial risk of loss to the owner of the property or to the person for whose benefit the property was held. Tex. Penal Code § 32.45(b); *Bowen v. State*, 374 S.W.3d 427, 431 (Tex. Crim. App. 2012). The Penal Code provides definitions for "fiduciary," "misapply," and "owner" relevant to this offense. "Fiduciary" is defined as including a "manager" or an "employee." *Id*. § 32.45(a)(1)(D). "Misapply" means "to deal with property contrary to an agreement under which the fiduciary holds the property." *Id*. § 32.45(a)(2)(A). "Owner" means a person who has title to the property, possession of the property (whether lawful or not), or a greater right to possession of the property than the actor. *Id*. § 1.07(a)(35). A "substantial risk of loss" means that a real possibility of loss exists and that the risk of loss is a positive possibility and more likely than not to occur. *Salcido v. State*, No. 08-04-00286-CR, 2006 Tex. App. LEXIS 3764, at *13 (Tex. App.—El Paso May 4, 2006, no pet.) (mem. op., not designated for publication) (citing *Dwyer v. State*, 836 S.W.2d 700, 702 (Tex. App.—El Paso 1992, pet. ref'd)).

Here, the record shows that the property at issue consisted of cash-deposit bags from the Lometa Family Dollar store that contained cash from the close of the business on September 26, September 30, and October 2, and that the owner of the property was the store's district manager, Barringer. *See Byrd v. State*, 336 S.W.3d 242, 252 (Tex. Crim. App. 2011) (noting that when entity such as corporation owns property, traditionally preferable practice has been to allege ownership in natural person acting for corporation; alternatively, corporation may

7

be named as owner and may call any agent or employee holding relevant position in company to testify that corporation did not give effective consent for person to take corporation's property). The record also shows that Owens was a fiduciary of Barringer because at the time of the offenses in September and October of 2016, she worked for Barringer as a store manager at the Lometa Family Dollar store and was responsible for handling the property at issue by counting the cash on hand at the end of the day and depositing it with the bank on Barringer's behalf.

Further, although Owens contends that any number of store or bank employees could have been charged and the evidence would have been "as damning against them as it was against her," Owens overlooks that only she provided law enforcement with a falsified Deposit Log as part of the underlying investigation. *See Labree v. State*, No. 08-16-00325-CR, 2018 Tex. App. LEXIS 8355, at *18 (Tex. App.—El Paso Oct. 12, 2018, no pet.) (not designated for publication) (noting that jury could have reasonably inferred that defendant made falsified entries in check register to conceal her actions). Additionally, the jury was provided with evidence that:

- Owens was the only employee who had signed out all three of the missing deposits;

- Owens did not report the missing money from any of those deposits to Barringer when she failed to receive a receipt;

- Owens was the last person to have the deposit bags for September 26, September 30, October 1, and October 2;

- The original Deposit Log listed Owens's name in the "deposited by" column for all three of the missing deposits;

- Owens admitted taking the bags for September 26, September 30, October 1, and October 2 to the bank, but she could not explain why the October 1 deposit was the only one to clear the bank;

8

- Kidd saw Owens put cash-deposit bags into the bank's night drop, but Kidd did not know the dates on them;

- Subsequent deposits for the Lometa Family Dollar store cleared the bank without incident;

- Owens's altered pages of the Deposit Log, which she voluntarily provided to Investigator Barnes, were difficult to read;

- Owens's altered pages of the Deposit Log contained entries blurring the amounts that Owens deposited on September 26, September 30 and October 2 (the dates of the three missing deposits);

- Owens's altered pages of the Deposit Log contained several entries blurring the names of the employees who counted the cash on hand and signed it out to be deposited;

- The first page of Owens's altered Deposit Log used white correction tape to cover a portion of the lower-left column listing the amounts of the store's cash on hand by date and was overwritten with dates in late September;

- The first page of Owens's altered Deposit Log concealed a $600 discrepancy for September 16 between the amount of cash on hand at the end of the day and the amount actually deposited, using white correction tape to cover the original amount of $1,876.00 and writing $1,276.00 in its place (an amount corresponding to the amount on the bank receipt for the deposit that day);

- Investigator Barnes did not find any evidence that Kidd, Torres, or the bank was responsible for the missing money;

- Kidd and Torres were cooperative and provided Investigator Barnes with information about who may have been responsible for the crime; and

- The bank did not have any issues, aside from this incident, with lost or misplaced deposits from the night drop.

Given this evidence, a rational jury could have reasonably inferred that: (1) there had been no problems with the bank's night drop with other customers or the Lometa Family Dollar; (2) Owens took the cash-deposit bags from Kidd; (3) Owens was the last person to possess all the cash-deposit bags that went missing; (4) the cash-deposit bags that Kidd saw Owens put into the bank's night drop were not the ones for September 30 and October 2 because

9

those never cleared the bank; (5) Owens misapplied the property when she intentionally kept the cash-deposit bags instead of putting them into the bank's night drop; (6) Owens purposefully altered the Deposit Log and gave it to Investigator Barnes to mislead him and conceal her criminal activity; and (7) Owens knew that taking Barringer's money for herself would involve substantial risk of loss to Barringer, the owner of the property listed in the indictment. We conclude that the combined and cumulative force of all the evidence at trial, viewed in the light most favorable to the jury's conviction, was sufficient to allow a rational jury to find beyond a reasonable doubt that Owens committed the charged offense of misapplication of fiduciary property. *See Jackson*, 443 U.S. at 319; *Nisbett*, 552 S.W.3d at 262; *Showery v. State*, 678 S.W.2d 103, 106 (Tex. App.—El Paso 1984, pet. ref'd) (concluding that complainant's testimony, corroborated by documentary evidence, was sufficient to support conviction for misapplication of fiduciary property); *see also Springer*, 2005 Tex. App. LEXIS 6979, at \*6, 12 (rejecting contention that circumstantial evidence was insufficient to support conviction for misapplication of fiduciary property). Accordingly, we overrule Owens's appellate issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

---

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Triana and Kelly

Affirmed

Filed: August 20, 2019

Do Not Publish