Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



VALERIE CHAVEZ,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00076-CR

Appeal from the

168th District Court

of El Paso County, Texas

(TC# 20020D04873)




O P I N I O N

           This is an appeal from a jury conviction for the offense of theft in an amount of
$1,500 or more but less than $20,000. The court assessed punishment at two years’
confinement in a State Jail facility probated for five years’ community supervision. We
affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           During the month of April 2002, Appellant Valerie Chavez was working as a teller
at United Bank in El Paso, Texas. Appellant Chavez was a floater, or an individual who
worked at several branches of the bank. On April 17, 2002, Appellant was working in a
branch on the east side of El Paso in the motor bank alongside Gerardo (Jerry) Candelas,
another teller. Candelas testified that at approximately 4 p.m. that evening, he heard
Appellant make a sound of frustration. Appellant then told Candelas that she was out of
balance. She was short $6,070.21. She did not try to conceal the fact that she was out of
balance. Candelas then proceeded to audit the Appellant’s account and verified the account
was not in balance. Meanwhile, the other two tellers who were also working at the time,
Claudia Meza Arredondo and Sylvia Rivera, arrived at the motor bank from the lobby which
was located approximately 100 yards away. The motor bank is a separate building from the
lobby. Arredondo and Rivera observed that Candelas was auditing the Appellant’s account
and they began to look over the Appellant’s journal tape. The journal tapes are print-outs
recording all of the business transactions that have taken place throughout the course of the
day. Each teller was required to sign, date, and place their journal tape in an unlocked
drawer at the end of the day. That procedure occurred on a daily basis.
           The tellers were personally responsible for their drawers since each was assigned to
an individual drawer. The tellers all had a set of keys that would open or lock their drawers. 
Tellers were supposed to keep their drawers locked whenever they were not within the
vicinity, or at their station. Elvia Serna, the customer service officer, testified that tellers are
responsible for safeguarding their drawers for security purposes. Specifically, the tellers
safeguarding techniques included: keeping the keys in their possession at all times, locking
their drawers when not in the vicinity, and not leaving their keys at the teller station, among
other security techniques. Elvia Serna did not notice the Appellant violating any security
provisions while working at the west branch. Duplicate keys were held in a dual control
lockbox that required a combination for access that could only be accessed by two
individuals being present at the same time. Leaving the key in the drawer was strictly
forbidden by company policy as a means of security. Each teller was solely responsible for
the money within their respective drawers.
           An armored courier truck arrived daily to collect all of the money, checks, and
necessary paperwork for the day. The bank employees were auditing the Appellant’s account
and checking the journal tape when they felt pressured to stop. They sent the money off
although the funds were incomplete. According to the bank’s records, the Appellant began
that day with $14,066.63 in her teller drawer (which did match her ending cash from the
previous day of April 16, 2002). At the end of the following day (the day of the incident),
Appellant could only account for $7,102.62, which left $6,070.21 unaccounted for. She
should have actually had $13,172.83 as her ending cash balance for April 17, 2002. It was
assumed at the time, that a mathematical error occurred that could be addressed the following
day. At that point, the Appellant should have notified a supervisor about the shortage but
failed to do so. The Appellant did fill out the necessary paperwork indicating there had been
a shortage, however, it was not signed by a supervisor as required. Sylvia Rivera, a teller
located at the east branch, testified that she did not observe the defendant call and advise the
supervisor at the time, Becky McBain, that the account balanced short.
           McBain learned about the shortage the following morning when she was told by
Sylvia Rivera. McBain immediately began to make phone calls. The Appellant went to work
the following day and was not allowed to handle any business transactions involving money;
rather, she was told to answer telephones as a receptionist. Supervisor Becky McBain asked
teller Jerry Candelas to bring the defendant’s journal tape. Candelas testified that Valerie
Chavez told him she left the tape on the counter, although it was never physically recovered. 
There was one tape dated for April 17; that tape, however, consisted of the actual recordings
from the previous day of April 16.
           On the morning of Thursday, April 18, Kim McGlone, the Vice-President of United
Bank, arrived at the east side branch and began to audit the Appellant’s drawer. She testified
that Appellant had never informed her of the shortage. The bank employees proceeded to
search for the missing money. They called customers, thoroughly searched the trash,
drawers, and bank records. The money was never recovered. McGlone stated that
Appellant’s cash drawer had been in balance every day that week leading up to the April 17
shortage. The record of Appellant’s cash transactions for that day showed no large cash
transactions. Accordingly, it would have been very difficult for Appellant to accidentally
have given the approximate $6,000 to a customer given that it is a quite large bundle of
money. McGlone testified that only someone with access to Appellant’s teller drawer could
have taken the money.
           On Friday, April 19, the Appellant was scheduled to work at the branch located on the
west side. The Appellant notified Elvia Serna, the customer service officer, at the west side
location, that she did plan to resign due to the fact that she would be immediately employed
on the following Monday and would not be able to give two weeks notice. That same day,
the defendant gave a letter of resignation to Kim McGlone and stated that she was to be
immediately employed with a separate company on Monday. She would not disclose further
details as to where she would work even though she was asked to elaborate.
           Other testimony indicated that there were two instances on April 17 when Appellant
was alone in the motor bank because Candelas had run an errand to the main bank, and he
took his hour-long lunch break. There was testimony that Appellant had bought a diamond
ring worth $6,000 on credit, and Appellant had taken out a loan and she was worried her
husband would find out about the loan. Also, about a week before the incident, Appellant’s
husband had been in an accident which totaled their Toyota Forerunner. There was also
testimony about the contents of Appellant’s cash drawer. On Monday, April 15, Appellant
did not have any $2 bills in her teller drawer. On April 16, she had 75 $2 bills in her drawer,
and on Wednesday, April 17, she again had no $2 bills in her drawer. Appellant testified that
it would usually take months to accumulate and distribute that many $2 bills. She had no
explanation for the unusual activity involving the $2 bills. Further, on Tuesday, April 16,
Appellant ended the day with eight wraps of $20 bills in her drawer, but on Wednesday,
April 17, she was left with only three wraps which amounted to a difference of $5,000
nothwithstanding the fact she had made no large cash transactions. Finally, on Tuesday,
April 16, Appellant ended up with 27 loose $50 bills in her drawer, but on the 17th, she
ended with only one loose $50 bill, a difference of $1,300; again, notwithstanding the fact
she had made no large cash transactions.
           Appellant testified in her own defense. She stated that when she initially tried to
balance her drawer that day, she was $12,000 short. She then realized that she had entered
a $6,000 plus check deposit as a cash deposit. However, after correction, she was still short
by more than $6,000. She asked Candelas to audit her drawer. Rivera and Arredondo then
scrutinized Appellant’s journal tape. Appellant testified that her immediate supervisor,
Becky McBain, was not available at the time. As a result, she called Kim McGlone and told
her of the shortage. Appellant testified that neither she nor the other tellers were particularly
concerned about the shortage because they believed it was due to a mathematical error which
would eventually be corrected.
           On cross-examination, Appellant acknowledged that there were no cash transactions
on the day of the incident that came anywhere near to $6,000, and that she would have
remembered such a large cash transaction. She stated that she did not dispose of the journal
tape and she always left her key in the teller drawer contrary to the testimony of Candelas and
Rivera. Appellant stated that she did not know if she left her drawer unattended on the 17th. 
Appellant acknowledged that because the money was missing from her teller drawer, it was
reasonable to consider her the most likely suspect, but she denied having taken the money. 
           The defense also presented evidence to explain some of the suspicious circumstances
that came out during the State’s case-in-chief. Appellant testified that she did not want to
tell McGlone where she was going to start her new job because her new boss’s wife formerly
worked at United Bank and she remained friendly with the bank employees. Appellant did
not want the bank to know that a former employee was involved in getting her the new job. 
Appellant agreed that the ring had cost about $6,000, but she had financed $3,000 of the cost
on her credit card. Her ex-husband testified that they had financed part of the ring, and he
was making payments on the ring during their marriage. Appellant denied having any loan
that she was trying to hide from her husband. Further, both Appellant and her ex-husband
testified the insurance company for the other person involved in the accident had paid for the
Toyota Forerunner. Evidence was also presented indicating that the all the tellers at the bank
had had a shortage on previous occasions and that many shortages had resulted from
mathematical errors.
II. DISCUSSION
           In Issue No. Two, the Appellant contends that the evidence was legally insufficient
to support the guilty verdict. In reviewing the legal sufficiency of the evidence, we are
constrained to view the evidence in the light most favorable to the judgment to determine
whether any rational trier of fact could find the essential elements of the offense, as alleged
in the application paragraph of the charge to the jury, beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Butler v. State, 769 S.W.2d
234, 239 (Tex. Crim. App. 1989); Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App.
1987). More particularly, sufficiency of the evidence should be measured by the elements
of the offense as defined by the hypothetically correct jury charge for the case. Malik v.
State, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997).
           Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable
doubt. Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951,
111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Dwyer v. State, 836 S.W.2d 700, 702 (Tex. App.--El
Paso 1992, pet. ref’d). We do not resolve any conflict in fact, weigh any evidence or
evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury
trial are given great deference. Menchaca v. State ,901 S.W.2d 640, 650-52 (Tex. App.--El
Paso 1995, pet. ref’d); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d
757, 759 (Tex. App.--El Paso 1992, pet. ref’d); Bennett v. State, 831 S.W.2d 20, 22 (Tex.
App.--El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial
in the light most favorable to the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we
resolve any inconsistencies in the evidence in favor of the verdict. Matson, 819 S.W.2d at
843 (quoting Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). The trier of
fact, not the appellate court, is free to accept or reject all or any portion of any witness’s
testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex. App.--El Paso 1995, pet. ref’d).
           In this case, there were several incidents that may have allowed a reasonable person
to conclude that the Appellant did steal $6,070.21 on April 17, 2002 from her teller drawer. 
In the time before the incident, the Appellant had demonstrated troublesome financial issues.
Specifically, one week prior to the incident, Appellant’s husband had been in an automobile
accident which totaled their vehicle, a Toyota Forerunner. She was wearing a diamond ring
that cost $6,000. She also purportedly had a secret loan her husband did not know about. 
The State provided evidence that cash was actually missing from the Appellant’s drawer by
demonstrating the presence and then absence of $2 and $50 bills. The Appellant also stated
that she did not handle any large transactions the day of the incident, and could not provide
any explanations for the missing money. Up until April 17, the defendant did not have any
problem balancing out. The Appellant was solely responsible for the key to her drawer (as
were the other tellers) at all times. She testified that she often left her drawer unattended for
some time with the key hanging from the drawer; however, in the eight months that
Appellant worked with United Bank, she had never been reprimanded or given formal notice
for any behavior of this kind. Leaving the key in the drawer was against strict policy at
United Bank. On the day of April 17, Appellant had several opportunities alone at the Motor
Bank when she could have taken the money. The only other teller in the motor bank, Jerry
Candelas, left to retrieve work from the main lobby, and also left for an hour-long lunch
break; during these instances, she had ample opportunity to have stolen the money.
           Appellant testified that the missing money was a result of a mathematical discrepancy.
However, if it had been a simple mathematical error, then the computer system would have
detected it during the multiple audits that followed. It was also the Appellant’s responsibility
to notify a supervisor about the shortage that occurred; strong evidence suggests that this did
not occur. Furthermore, United Bank physically searched for the missing funds and did call
clients the Appellant worked with on the day of the incident to determine if she accidentally
gave out too much money. It was determined that this did not occur.
           Two days after the money went unaccounted for, Appellant resigned stating that she
would immediately begin working with a separate company. She did not release any other
details concerning the new company she would be employed with. Combined, all of the
circumstances indicate that the evidence was legally sufficient to support the conviction. See
Rodriguez v. State, 32 S.W.3d 921, 922-26 (Tex. App.--Corpus Christi 2000, no pet.); Miller
v. State, 909 S.W.2d 586, 594-95 (Tex. App.--Austin 1995, no pet.); Bertram v. State, 670
S.W.2d 305, 306-08 (Tex. App.--Amarillo 1983, pet. ref’d). Issue No. Two is overruled.
           In Issue No. One, Appellant states that the evidence was factually insufficient to
support the guilty verdict. In conducting a factual sufficiency review, we view the evidence
in a neutral light to determine whether a jury was rationally justified in finding guilt beyond
a reasonable doubt. We set aside the fact finder’s verdict only if (1) the evidence supporting
the verdict, when considered by itself, is too weak to support the finding of guilt beyond a
reasonable doubt; or (2) evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Zuniga v. State, 144 S.W.3d
477, 484-85 (Tex. Crim. App. 2004). However, our factual sufficiency review must be
appropriately deferential so as to avoid substituting our judgment for that of the fact finder. 
Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Accordingly, we are
authorized to set aside the jury’s finding of fact only in instances where it is manifestly
unjust, shocks the conscience, or clearly demonstrates bias. Id. at 135. If the evidence is
factually insufficient, we remand to the trial court for a new trial. Id. at 133-35.
           The Appellant did provide evidence that the Toyota Forerunner which was totaled by
her ex-husband was paid for by the other person’s insurance company. Her ex-husband also
testified that the $6,000 ring she was wearing was partially financed on a credit card and that
he was making payments since it was a wedding ring; Appellant also denied having a secret
loan. Appellant began employment with a different company a week following the incident.
She did not notify United Bank that she would be working with White Cap (a construction
supply company), because of close relations between her employer’s wife and acquaintances
at United Bank where the wife used to be employed. However, there was sufficient evidence
presented that demonstrated that more than $6,000 was missing from the Appellant’s teller
drawer, and that the Appellant was responsible for that drawer. The audits following the
incident demonstrate that a mathematical error could not have occurred; the Appellant’s debt
and abrupt resignation with United Bank provide sufficient evidence to have allowed for a
rational conclusion that the Appellant did unlawfully appropriate the missing funds from
United Bank. The evidence in this case is factually sufficient. Appellant’s Issue No. One
is overruled.
 

           In Issue No. Three, Appellant argues that the court erred in not granting a motion for
a mistrial in response to prosecutorial misconduct on two separate instances. Appellant
contends that the prosecutor committed prosecutorial misconduct during cross-examination
of the Appellant. During that cross-examination, the following exchange occurred:
STATE:You paid for a lawyer, didn’t you?
 
APPELLANT:Yes, I did.
 
DEFENSE:Wait a minute, Judge. What does that have
to do with anything?
 
COURT:I don’t know, Mr. DeKoatz. You need to
object when it’s not relevant.
 
DEFENSE:I’m objecting.
 
COURT:Sustained.
 
DEFENSE:I’m moving that the Jury disregard that last
statement.
 
COURT:Ladies and Gentlemen of the Jury, the fact
that an individual has hired an attorney is not relevant to
anything before this Court. You are instructed to disregard that
last question.
 
DEFENSE:I’m moving that the Court instruct the
prosecutor to not make that sort of comment again or that the
Court hold him in contempt right now.
 
COURT:Mr. DeKoatz.
 
DEFENSE:I’m moving for that.
 
COURT:Mr. DeKoatz, you will object when a
question is not relevant. I have sustained it. Let’s move on.
DEFENSE:I’m moving for a mistrial.
 
COURT:Denied.
 
STATE:In two years have you tried to take a lie
detector test?
 
APPELLANT:No, sir.
 
DEFENSE:You know, Judge, lie detector tests are not
even admissible.
 
COURT:Sustained. All right. Let’s move on.
 
DEFENSE:I’ll object on the record the second instance
of what we suggest is prosecutorial misconduct, Your Honor.
 
COURT:Mr. Schulz, please move on.
 
STATE:Thank you, Your Honor.
 
           Initially, Appellant contends that the prosecutor’s questioning of Appellant concerning
whether or not she took a lie-detector test was error and the court should have granted a
mistrial. The State maintains that Appellant has failed to preserve this issue for review. We
agree.
           In order to preserve a contention regarding prosecutorial misconduct, the accused
must: (1) make a timely and specific objection; (2) request an instruction to disregard the
matter which was improperly placed before the jury; and (3) move for a mistrial. Perkins v.
State, 902 S.W.2d 88, 96 (Tex. App.--El Paso), supplemented, 905 S.W.2d 452 (Tex. App.--El Paso 1995, pet. ref’d). Regarding the lie-detector allegation, Appellant did not secure a
ruling on the prosecutorial misconduct objection. Further, neither did she request an
instruction to disregard nor did she move for a mistrial. Accordingly, nothing regarding this
portion of Appellant’s issue is preserved for review.
           The State also contends that Appellant failed to preserve that part of her issue
regarding the question posed by the prosecutor about the hiring of a lawyer. Again, we
agree. The only objection lodged with regard to that question was on the grounds of
relevance. No objection was lodged on the specific ground of prosecutorial misconduct
which is required in order to preserve this type on contention on appeal. See id. Issue No.
Three is overruled in its entirety.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
                                                                  RICHARD BARAJAS, Chief Justice
January 12, 2006
 
Before Barajas, C.J., McClure, and Chew, JJ.
 
(Do Not Publish)